[830 NYS2d 166]

MELODY GROSS, Appellant, v JEFFREY GROSS, Defendant. KIM BRENNAN JOYCE, Nonparty Respondent.

Second Department, December 26, 2006

## APPEARANCES OF COUNSEL

*Bechtle & Murphy,* Garden City (*Eugene W. Bechtle, Jr.,* of counsel), for appellant.

*Horn & Horn,* Huntington (*Jeffrey S. Horn* of counsel), for nonparty respondent.

## OPINION OF THE COURT

SKELOS, J.

On December 7, 2000, the plaintiff commenced this action, inter alia, for divorce against the defendant through her former attorney, Kim Brennan Joyce, the nonparty respondent. At that time, Joyce was a named partner in the law firm Wolfe, Romano & Joyce, LLP, a since-dissolved limited liability partnership (hereinafter the partnership). On February 4, 2003, the action was submitted to the Supreme Court, Nassau County (Woodard, J.), for an inquest on the grounds for the divorce.

Subsequently, the parties desired to enter into a stipulation of settlement (hereinafter the stipulation), inter alia, to set forth their respective rights and obligations regarding certain property interests, including their interests in the marital residence. At a conference in the same court (Diamond, J.), the parties and their counsel, in the presence of the trial judge, discussed the terms of the stipulation, which was later executed on April 27, 2004. By judgment entered December 23, 2005, into which the stipulation was incorporated but not merged, the Supreme Court granted the divorce. As is relevant to this appeal, the plaintiff agreed, pursuant to section 13.3 (b) of the stipulation, that she was responsible for her own attorney's fees and that:

> "in the event any outstanding legal fees remain on [plaintiff's] behalf to *Kim Brennan Joyce, Esq.,* same

*shall* be satisfied from her proceeds from the sale of her one-half equity interest in the marital residence at the time of closing. In the event there is a dispute as to any counsel fees outstanding, an amount sufficient to satisfy *Kim Brennan Joyce, Esq.'s* final bill *shall be held by her in escrow pending a resolution of same"* (emphasis added).

In accordance with the foregoing stipulation, on August 4, 2004, at the closing on the sale of the marital residence, the parties' attorneys executed an agreement pursuant to which each attorney held in escrow the sum of $140,713.05, representing 50% of the net proceeds of the sale of the marital residence, "without disbursement *until further agreement of the parties or order of the court directing same"* (emphasis added).

By notice of motion dated August 12, 2004, Joyce moved, inter alia, to be relieved as counsel for the plaintiff, for a retaining lien against the plaintiff's files, for a charging lien against Joyce's share of the money held in escrow, to permit Joyce to retain the sum of $53,191.61 in escrow subject to determination of the fee dispute committee or further court order, and to permit Joyce to release from escrow the sum of $87,521.44 to the court pending further order of the court. In support of her motion, Joyce submitted her own affirmation in which she averred, inter alia, that she had sent the plaintiff bills for services rendered in the requisite time frames under the rules governing matrimonial actions and that the plaintiff never disputed those bills, but rather, repeatedly assured Joyce that the bills would be paid from the proceeds of the action. Joyce further averred that the closing proceeds were held in escrow "due to failure of the parties to agree on the disbursement of proceeds."

By notice of cross motion dated September 17, 2004, the plaintiff, who had retained substitute counsel on September 2, 2004, moved, among other things, to vacate the escrow agreement and to preclude Joyce "from recovering unpaid legal fees for services rendered to said plaintiff, Melody Gross, in the within matrimonial action."

By notice of cross motion dated October 7, 2004, Joyce cross-moved to confirm section 13.3 (b) of the stipulation and for the court to "so order[ ]" the stipulation.

By order dated March 16, 2005, the court, inter alia, granted the motion to the extent of permitting Joyce to retain the sum of $53,191.61 in her escrow account subject to a determination

by the fee dispute committee, and directing her to release the remaining sum held in escrow to the plaintiff.

The question presented on this appeal is whether the Supreme Court properly determined that Joyce complied with the requirements of 22 NYCRR 1400.3 and 1400.5, and thus permitted her to retain the sum of $53,191.61 in her attorney escrow account subject to determination of her application for an attorney's fee by the fee dispute committee. For the reasons stated below, the order is affirmed insofar as appealed from.

The plaintiff and the partnership entered into a retainer agreement dated September 28, 2000, which was executed by the plaintiff and Joyce, on behalf of the partnership (hereinafter the retainer agreement). Under the circumstances of this case, the absence of the execution and filing of a new retainer agreement upon her substitution as the attorney-of-record after the dissolution of the partnership did not constitute noncompliance with 22 NYCRR 1400.3 (see Potruch v Berson, 261 AD2d 494 [1999]). The retainer agreement at bar fully complied with the requirements of 22 NYCRR 1400.3 by setting forth in plain language the terms of compensation and nature of the services to be rendered and, at all times, that agreement governed the attorney/client relationship. Notwithstanding that the retainer agreement was between the plaintiff and the partnership, Joyce executed it for the partnership and made appearances for the plaintiff. On August 13, 2002, after the death of one of Joyce's partners and the dissolution of the partnership, the plaintiff signed a "consent to change attorney" form (hereinafter the substitution) pursuant to which the plaintiff agreed to substitute Joyce as attorney-of-record. Joyce signed the substitution on her own behalf and on behalf of the partnership. It is undisputed that from the time when the retainer agreement was executed on September 28, 2000, through the date of the substitution on August 13, 2002, and for two years thereafter, Joyce herself appeared on the plaintiff's behalf over that four-year period in a multitude of court proceedings.

In this regard, it should be noted that just 10 days after the substitution was signed, Joyce appeared on the plaintiff's behalf in response to an order to show cause submitted by the defendant. At that time, the defendant moved, inter alia, to vacate the provisions of a pendente lite order dated October 29, 2001, which imposed a temporary restraining order enjoining the defendant's use of a certain checking account, and the plaintiff cross-moved, inter alia, for an award of interim counsel fees in

the sum of $3,500. Significantly, submitted with the foregoing papers was the plaintiff's sworn affidavit dated August 14, 2002, in which she asserted, inter alia:

"My attorneys have been forced to expend additional counsel fees to oppose this motion . . .

"I retained my attorneys in September, 2000 and paid an initial retainer in the sum of $5,000. I have long exhausted the retainer, and owe attorneys fees in excess of $32,000.00. As can be seen from a review of the retainer agreement dated September 28, 2000 annexed hereto as Exhibit 'F' and billing statements annexed hereto as Exhibit 'G', my attorneys bill me at the hourly rate of $250.00 per hour."

Clearly, the plaintiff thereby ratified both Joyce's representation of her after the substitution and that the terms of the original retainer agreement were binding on them (*see Koeth v Koeth*, 2002 NY Slip Op 40046[U], at *11-12 [2002]; *Sheresky, Aronson & Mayefsky, LLP v Linder*, NYLJ, Oct. 22, 1998, at 30, col 3; *cf. King v Fox*, 7 NY3d 181 [2006]). Again, on March 13, 2003, and on April 16, 2003, Joyce appeared on the plaintiff's behalf to oppose a motion to dismiss made by the defendant and to cross-move for an award of counsel fees. Further, not only did Joyce appear for the plaintiff at the court conference when the parties negotiated the stipulation, but the plaintiff also ratified that representation by referring specifically to Joyce as her attorney in section 13.3 (b) of the stipulation. Thus, this case is clearly distinguishable from *Potruch v Berson* (*supra*) where the attorney seeking fees was not affiliated with the law firm which had a retainer agreement with the client at the time the agreement was executed (*cf. Tenzer Greenblatt LLP v Rinfret*, NYLJ, Sept. 16, 1997, at 27, col 5).

This Court has consistently recognized that the rules under 22 NYCRR part 1400 have been " 'promulgated to address abuses in the practice of matrimonial law and to protect the public' " (*Mulcahy v Mulcahy*, 285 AD2d 587, 588 [2001], quoting *Julien v Machson*, 245 AD2d 122 [1997]; *see Behrins & Behrins v Sammarco*, 305 AD2d 346, 347 [2003]; *Bishop v Bishop*, 295 AD2d 382, 383 [2002]) and that noncompliance with those rules "will result in preclusion from recovering . . . legal fees" (*Bishop v Bishop, supra; see Kayden v Kayden*, 278 AD2d 202 [2000]). Here, however, the conduct of counsel did not evince any of the hallmarks of abuse for which those rules were promulgated. The case at bar is distinguishable from those in

which an attorney's noncompliance precluded recovery of a fee, for example, where an attorney sought fees for services that were outside of the limited scope of the engagement set forth in the retainer agreement (*see Mulcahy v Mulcahy, supra; Kayden v Kayden, supra*), or where the retainer agreement was missing certain provisions required by the applicable rules (*see Bishop v Bishop, supra*). The retainer agreement at bar satisfied the requirements of 22 NYCRR 1400.3 and, in light of, inter alia, the plaintiff's ratification of the retainer agreement, the absence in this case of a new retainer agreement did not constitute noncompliance with the rules.

In addition, Joyce's use of the escrow at closing did not violate 22 NYCRR 1400.5. The record shows that the trial court preapproved the parties' express agreement to use an escrow at the closing to hold monies aside to satisfy Joyce's outstanding attorney's fees (*see* 22 NYCRR 1400.5 [a] [3]). Indeed, the Disciplinary Rules provide for the use of an escrow in cases such as this, where an attorney's right to be paid his or her fees is disputed by the client or payment of fees is otherwise unresolved (*see* 22 NYCRR 1200.46 [b] [4]). Joyce, apparently cognizant of these rules, rightfully relied on them. At the court conference in the presence of the trial judge, the parties agreed in the stipulation to incorporate the use of such an escrow for the express purpose of resolving disputes regarding attorney's fees. Thus, this case is clearly distinguishable from *Behrins & Behrins v Sammarco* (*supra* at 346), where the plaintiff law firm obtained a confession of judgment without court approval. Here, the procedure undertaken by Joyce was expressly authorized by the parties and the Supreme Court at the time the parties entered into the stipulation, and the court so found as a matter of fact. Of particular significance is the Supreme Court's express finding that the plaintiff's contention regarding the attorney's fee was not credible, specifically, her contention that "Article 13 was 'slipped' into the Stipulation of Settlement and . . . was never fully explained to her." The trial judge based his finding on his own personal knowledge of the case, having been present at the conference at which the stipulation, and more particularly, the issue of counsel fees, was negotiated and settled. Specifically, the trial judge stated that:

> "At a conference with the Court, all counsel and both parties present, the issue of counsel's fee came up and was addressed by the Court. At no time did either party indicate that they did not understand

how or where the funds to pay counsel fees would come from. The terms were placed in the Stipulation of Settlement and the Stipulation was signed by both parties."

Thus, Joyce's use of the escrow was not without court approval in contravention of 22 NYCRR 1400.5 (a) (3).

In addition, Joyce did not violate 22 NYCRR 1400.5 (a) (1), as paragraph 11 (a) of the retainer agreement expressly authorized the taking of a security interest (*see* 22 NYCRR 1400.5 [a] [1]; *Behrins & Behrins v Sammarco, supra* at 347). Further, the requirement that there be notice of the application for the security interest to the other spouse was satisfied (*see* 22 NYCRR 1400.5 [a] [2]). The defendant spouse, who was present at the court conference when counsel fees were discussed and the stipulation containing a provision for them was negotiated, had notice of the intended use of an escrow at closing (*see* 22 NYCRR 1400.5 [a] [2]). Indeed, the defendant was a party to the stipulation and in an affirmation he submitted in support of his own cross motion to release his share of the said escrow, the defendant averred that the funds were placed in escrow at the closing at the plaintiff's behest because the parties could not agree on certain offsets. Consequently, the requirements of 22 NYCRR 1400.5 governing security interests were satisfied.

Thus, the plaintiff's misplaced attempt to avail herself of the protections afforded a truly aggrieved client from the unsavory conduct of an attorney as a mechanism for avoiding paying the fees earned by Joyce in good faith and in compliance with the applicable rules (*see* 22 NYCRR 1400.3, 1400.5) cannot be sanctioned.

Accordingly, the order is affirmed insofar as appealed from, with costs.

SCHMIDT, J.P., RIVERA and LIFSON, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.