OPINION OF THE COURT
Geoffrey J. O’Connell, J.
*608 Movant Jerome T. Dorfman, a member of Bethpage Jewish Community Center, applies for an order vacating the amended order of this court dated March 13, 2007 that approved the joint application of Bethpage Jewish Community Center and Midway Jewish Center for consolidation pursuant to Religious Corporations Law § 208 and, after vacating that order, for an order denying the application. The joint applicants oppose.
Background
On March 9, 2007, this court granted the joint applicants’ ex parte application and issued an order to that effect. Thereafter, an amended order was granted on March 13, 2007 which corrected a technical error in the original. On April 27, 2007, movant presented the order to show cause by which the instant application was made. The application was randomly assigned to Justice Mahon who, after determining that the application was for relief from an order that I had granted, referred the matter to me with the consent of the parties. After a conference, the parties stipulated to a modified temporary restraining order and to a schedule for submission of papers. All motion papers were submitted to me and movant faxed a stipulation to a one-day extension of the due date for his reply to my chambers. On the submission date, Justice Mahon who was still listed as the IAS justice on the court’s computer system issued an order formally referring the matter to me.
Movant initially requested that the matter be referred back to Justice Mahon citing CPLR 2221 (a) (2), but withdrew that request upon receiving Justice Mahon’s order. Parenthetically, where an application made without notice is granted, CPLR 2221 (a) (2) permits a motion to vacate or modify the resulting order to be made to any justice of the court. However, it does not require that the motion to vacate or modify be made to a justice other than the one who granted the original order. Both sides appeared before me on April 27, 2007, the order to show cause was signed and the parties agreed that it was to be returnable before me.
The Bethpage Jewish Community Center was incorporated on September 6, 1955. There is no dispute that by 2006 there was a declining membership and potential financial difficulties. The Board of Trustees of the Bethpage Jewish Community Center undertook to explore options for addressing the perceived problems and one option was consolidation with another Jewish congregation. The parties agree that there were ultimately three *609 consolidation offers. However, as of May 2006 the applicants had only received an offer from the Midway Jewish Center and that offer was discussed with the membership of the Bethpage Jewish Community Center at its annual meeting held on May 16, 2006. The Board of Trustees determined to enter into negotiations with the Midway Jewish Center.
According to the applicants there were a series of meetings with the membership of the Bethpage Jewish Community Center at which the proposed consolidation with the Midway Jewish Center was discussed. Applicants assert that among the matters discussed was the possible retention of the cantor’s house. They further state that the Board of Trustees of the Bethpage Jewish Community Center approved the proposed consolidation with the Midway Jewish Center on December 5, 2006. Thereafter, the membership was notified of meetings to be held on December 10 and December 17 of 2006 with regard to the plan. A vote was taken on December 17, 2006 and the result was recorded as 131 in favor and 57 against. Thus, the consolidation was approved by more than a two-thirds vote.
Discussion
Movant contends that the court’s order approving the consolidation should be vacated because notice of the petition was not given. The applicants in opposition assert that, although the movant was not given notice of the petition, he was aware that its submission was planned and was imminent. They have also argued orally that measures are in progress to effectuate the consolidation and delay would result in prejudice.
The governing statute, Religious Corporations Law § 208, provides: “On presentation to the court of such petition and agreement for consolidation and on such notice as the court may direct, the court after hearing all parties interested desiring to be heard, may make an order approving the consolidation.” Movant correctly argues that similar language in other statutes has been construed to require that any application be made by order to show cause with notice as directed by the court to interested parties. (Cf. Smith v Smith, 291 AD2d 828 [4th Dept 2002]; Dominguez v Reardon, 14 Misc 3d 882 [Sup Ct, NY County 2007]; Bynoe v Riverside Church in City of N.Y., 13 Misc 3d 628 [Sup Ct, NY County 2006].) Certainly, where, as here, a number of congregants voted against the consolidation, *610 proceeding by order to show cause on notice to the congregants would be the better practice.
CPLR 2001 permits the court to correct a mistake, omission, defect or irregularity upon such terms as may be just. In the exercise of that power the court notified movant that any person interested in the application would be heard in open court on May 16, 2007. On May 16, 2007 the court further directed that a notice be posted forthwith prominently at each of the two houses of worship stating that any interested person not heard on May 16 would be given a further opportunity to be heard with respect to the consolidation application in open court on May 29, 2007. Such notice is comparable to that required by Religious Corporations Law § 194.
The court entertained oral argument on the motion on May 16, 2007 and heard anyone who expressed a desire to be heard on both May 16 and May 29.
At the hearings on May 16, 2007 and May 29, 2007 a number of members of the Bethpage Jewish Community Center expressed their disappointment that the institution to which they had contributed and helped build and in which they worshiped was being consolidated with the Midway Jewish Center with the new entity continuing at the Midway Jewish Center’s facilities. While such concerns are only natural, they do not raise justiciable issues.
Additionally, although both the Bethpage Jewish Community Center and the Midway Jewish Center were part of the conservative movement within Judaism, there were differences with regard to the level of joint participation by persons of both genders which some members of the Beth-page Jewish Community Center found disturbing. Since these matters fall within the realms of theology and ritual, they are not matters which the court may address. The Religious Corporations Law does not run afoul of the constitutional separation of church and state because, in conferring upon the courts powers over religious corporations, it distinguishes between the property and temporalities dedicated to use by religious groups which the state may supervise and regulate and the spiritual affairs which remain within the sphere of the group’s religious leadership. (Matter of Congregation Yetev Lev D’Satmar, Inc. v Kahana, 31 AD3d 541, 542-543 [2d Dept 2006].)
The remaining issues addressed by those who spoke on the two hearing dates merely echoed the issues raised by movant.
*611 Movant contends that the approval of the consolidation by the two congregations is fatally defective because only the consolidation agreement was presented for their consideration. He relies upon a literal reading of Religious Corporations Law § 208 which states: “Before the presentation of the petition to the court the agreement and petition must be approved by two-thirds of the votes . . . .” A statute should be construed so as to harmonize its various provisions with each other and with the general intent of the statute. (Matter of Anderson v Board of Educ. of City of Yonkers, 46 AD2d 360, 364-365 [2d Dept 1974].) So long as all of the information which the statute requires to be presented to the membership of the two entities was in fact submitted, the purpose of the statute has been accomplished. Movant has not identified anything contained in the petition which was not made known to the two memberships before the vote of approval was taken.
Movant contends that the vote of approval was defective because no meeting was held on December 17, 2006 when the voting took place. The notice sent to the membership of the Bethpage Jewish Community Center stated:
“I have made a small change to the previously announce schedule that will allow this general congregation meeting while still allowing us to meet our deadline. The previously announced Special Congregation Meeting on December 10, 2006 at 7:30 PM will provide an opportunity for all members to meet and share their thoughts. To allow additional time for you to make a decision, the vote scheduled for that evening has been postponed to a second Special Congregation Meeting to be held on December 17, 2006 at 7:30 PM. Voting will take place that evening between 7:30 PM and 9:30 PM.”
Movant asserts that, since no formal meeting was called to order on December 17, 2006, there was no opportunity to challenge the manner in which the voting was conducted. However, sworn testimony was taken at the May 16, 2007 hearing that the meeting was formally convened with the announcement that the voting could begin. It is not clear how movant claims to have been prevented from making a protest. Moreover, he does not allege that he wished to make a protest and only offers speculation that “[t]here was, in fact, a basis upon which the vote could have been challenged.” (Emphasis supplied.) He then speculates that members not in good standing were either allowed to vote or influenced as to how to vote without any substantiation in evidentiary form.
*612 Neither movant nor any other person present during the voting challenged the right of any person to vote except that after the voting had finished, the financial secretary who had forgotten to vote asked that he be allowed to vote and his request was denied. Rita Goldman who acted as a teller or vote counter following the balloting testified that at least two votes were removed and disregarded during the counting upon it being determined that the voters were not members in good standing entitled to vote. The votes were tallied and the results recorded.
Movant has identified no rule of procedure adopted by the Bethpage Jewish Community Center that was violated. Whether having adopted Robert’s Rules of Order, its own rules of procedure or no set rules of procedure, an assembly is itself the judge of all questions incidental to voting or the counting of votes. (Scott, Foresman’s Robert’s Rules of Order Newly Revised § 44 [8th ed 1981]; see, Ostrom v Greene, 161 NY 353, 362 [1900].) Having failed to raise any issue before the assembly, there is no issue for the court to review.
Movant contends that the Board of Trustees of the Bethpage Jewish Community Center failed to disclose other consolidation offers and failed to explore other financial alternatives. The board of a not-for-profit corporation enjoys the benefit of the business judgment rule which bars judicial review of actions taken in good faith and in the exercise of honest judgment. (Consumers Union of U.S., Inc. v State of New York, 5 NY3d 327, 360 [2005].) Absent a showing of bad faith in the form of self-dealing fraud, or unconscionability, a court will not overturn or invalidate the decisions made by directors. (Dennis v Buffalo Fine Arts Academy, 15 Misc 3d 1106[A], 2007 NY Slip Op 50520[U] [Sup Ct, Erie County 2007].) There is no reason why the business judgment rule should not apply here and there has been no allegation of bad faith.
Movant alleges that the consolidation agreement improperly named interim trustees rather than requiring an election. Religious Corporations Law § 208 provides only that a consolidation agreement contain “the names of the persons to be its trustees until the first annual meeting.”
Finally, movant contends that a provision of the consolidation agreement which exempts the members of the Bethpage Jewish Community Center for 10 years, and senior citizen members for life, from the payment of membership dues and building fund obligations to the new entity violates public *613 policy and requires that the consolidation be rejected. In support of this claim he cites Religious Corporations Law § 18 which governs the dissolution of a religious corporation. That statute provides that upon dissolution of a religious corporation any surplus left after the payment of debts and obligations “be devoted and applied to any such religious, benevolent, or charitable objects or purposes as the said trustees may indicate by their petition.” Movant contends that use of any funds derived from the assets of Bethpage Jewish Community Center to pay members’ dues violates this statute.
Simply put, the Bethpage Jewish Community Center is not being dissolved. Moreover, the permanent waiver of dues for “Senior Members,” the 10-year waiver of dues for all Beth-page Jewish Community Center members in good standing and the waiver of “Building Fund” obligations for both do not relieve them of all financial obligations to the new Midway Jewish Center. “All other fees and obligations levied on members of MJC-New, including but not limited to Hebrew School, B’nai Mitzvah, United Synagogue, Benevolent Fund, additional High Holiday seats and Assessments on all members effective after June 30, 2007 are not waived.” (Plan of consolidation at 2.) No effort was made to quantify the relative benefit of the waivers of dues and “Building Fund” obligations.
Whatever its magnitude, the plan of consolidation does confer some benefit upon “Senior Members” and members in good standing of the Bethpage Jewish Community Center. However, under section 515 of the Not-For-Profit Corporation Law, applicable here pursuant to section 2-b of the Religious Corporations Law, benefits may be conferred upon members in conformity with the purposes of the corporation. Inducements which promote membership and increase the resources available to a religious corporation would appear consistent with the corporate and religious purposes of the consolidated entity. Nor does there appear to be anything objectionable in acknowledging the past contributions of “Senior Members” to the assets being acquired by the new entity since seniors are generally assumed to have fixed incomes and increased expenses. While a benefit disproportionate to the resources of the religious corporation or the purposes it seeks to advance might attract scrutiny, there is no such evidence before this court. Finally, the existence of *614 this benefit was not concealed, but fully divulged to the congregants of both the Bethpage Jewish Community Center and the Midway Jewish Center and both nevertheless approved the consolidation.
The motion is in all respects denied.