OPINION OF THE COURT
Jack M. Battaglia, J.
In these two actions, plaintiff Ruth Selby, a member of the New York bar, seeks foreclosure on two mortgages executed by defendant Steven Stewart, also known as Steven McIntosh, on properties in Kings County designated 896A Lafayette Avenue (block 1610, lot 6) and 898 Lafayette Avenue (block 1610, lot 7). In action No. 1, the mortgage is dated July 17, 1996 in the principal amount of $50,000, and was given to secure legal fees to plaintiff by reason of her representation of defendant in a mortgage foreclosure action instituted against the same properties by Gertrude Lynn and Martin Bodner (index No. 19686/92). In action No. 2, the mortgage is dated October 8, 1997 in the principal amount of $30,000, and was given to secure legal fees to plaintiff by reason of her representation of defendant in a mortgage foreclosure action instituted against the same properties by Joy Felsher (index No. 19816/97).
With these motions, defendant seeks an order “vacating and annulling the underlying mortgage [s] herein for the reasons set forth in the supporting papers submitted herewith and dismissing the action[s] with prejudice”; and “pursuant to CPLR §§ 6512 and 6514 (a), cancelling, vacating and striking the [notices of pendency] in [these] action[s], dated and filed by Plaintiff on August 30, 2007 for failure to serve same as well as the [related] summons and complaint . . . within thirty days of the filing thereof.” (See notices of motion dated Oct. 29, 2007.) Except as indicated, the papers submitted by plaintiff and defendant on the two motions are identical.
*312 Defendant asserts that he first learned about each of these actions “when a copy of the summons and complaint was left in [his] mail box,” and that “[n]o attempt was made to serve [him] in person or to effect service upon [his] residence.” (See affidavit in support of motion H 3.) “[B]eing interested in resolving the merits” of these actions, however, defendant “is now willing to subject himself to the personal jurisdiction of the Court.” (See affirmation in support H 29.)
In his notices of motion, however, defendant cites no statutory basis for his pre-answer motions to “vacat[e] and annul[ ]” plaintiff’s mortgages, or for dismissing her complaints (see CPLR 2214 [a]); and the deficiency has been noted by plaintiff. (See affirmation in opposition 1T 1.) “[A] court may grant relief that is warranted by the facts plainly appearing on the papers on both sides, if the relief granted is not too dramatically unlike the relief sought, the proof offered supports it, and there is no prejudice to any party.” (Frankel v Stavsky, 40 AD3d 918, 918-919 [2d Dept 2007].) Here, little legal imagination is required to understand the motions as seeking dismissal pursuant to CPLR 3211, and plaintiff so understands them (see affirmation in opposition 111). The court exercises its discretion (see HCE Assoc. v 3000 Watermill Lane Realty Corp., 173 AD2d 774, 774-775 [2d Dept 1991]) to deem the motions as seeking dismissal of the complaints pursuant to CPLR 3211 (a) (1), based upon a “defense . . . founded upon documentary evidence” (namely, the mortgages), and CPLR 3211 (a) (7), contending that the complaints “fail[ ] to state a cause of action.”
“On a motion to dismiss pursuant to CPLR 3211, a court must accept as true the facts as alleged within the four corners of the complaint and accord the plaintiff the benefit of every possible favorable inference. To succeed on a motion to dismiss pursuant to CPLR 3211 (a) (1), the documentary evidence . . . must be such that it resolves all factual issues as a matter of law, and conclusively disposes of the plaintiffs claim. To succeed on a motion to dismiss pursuant to CPLR 3211 (a) (7), the evidence must demonstrate that no significant dispute exists as to the facts alleged by the plaintiff.” (Dodge v King, 19 AD3d 359, 360 [2d Dept 2005] [internal quotation marks and citations omitted].)
A defendant’s affidavit may be considered on a pre-answer motion pursuant to CPLR 3211, but unless it “conclusively establishes] that the plaintiff! ] ha[s] no cause of action” (see *313 Kempf v Magida, 37 AD3d 763, 765 [2d Dept 2007]), or “demonstrates, without significant dispute, that a material fact alleged by the complaint is not a fact at all” (see Quesada v Global Land, Inc., 35 AD3d 575, 576 [2d Dept 2006]), it cannot support an order of dismissal.
Enforceability of the Mortgages
The $50,000 mortgage dated July 17, 1996 that is the subject of action No. 1 is to be paid “with interest . . . to be computed from [its] date ... at the rate of 9 (nine) per centum per annum, and to be paid on demand according to a certain retainer agreement bearing [the same] date.” (See exhibit B to affidavit in support of motion.) The mortgage contains two handwritten paragraphs:
“17.1 owe Ruth Selby a legal fee for services related to: foreclosure on 896A & 898 Lafayette Ave, Brooklyn, New York pursuant to a retainer agreement dated July 17, 1996. I understand that I am giving Ruth Selby a mortgage on my property.
“18. In the event of non-payment of the amount due to Ruth Selby under the terms of this mortgage or a retainer agreement, the undersigned shall be responsible for the mortgagee’s reasonable legal fees for foreclosing on the mortgage.” (Id.)
The $30,000 mortgage dated October 8, 1997 that is the subject of action No. 2 contains identical provisions as to interest and payment, and near-identical handwritten paragraphs, except that the date of the referenced retainer agreement is October 8, 1997 and the mortgagee in the underlying foreclosure action is identified. (See exhibit C to affidavit in support of motion.)
Neither of the retainer agreements referenced in the mortgages, which appear to qualify the mortgages, are included among defendant’s moving papers. Defendant contends, however, that payment under the 1996 retainer agreement related to the $50,000 mortgage was “contingent and payable to her in the event of a successful defense of the foreclosure action.” (Affidavit in support H 6.)
Defendant contends that the mortgages are unenforceable because they were taken in violation of the antichamperty prohibition found in Judiciary Law § 488, and in violation of several Disciplinary Rules of the Code of Professional Responsibility — namely, DR 2-106 (22 NYCRR 1200.11), DR 5-103 (22 NYCRR 1200.22), and DR 5-104 (22 NYCRR 1200.23). Two of *314 these contentions, those based upon Judiciary Law § 488 and DR 2-106, are easily disposed of for purposes of these motions.
Section 488 of the Judiciary Law prohibits an attorney from taking or acquiring an interest in any “bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon.” (See Judiciary Law § 488 [1].) Although the “champerty defense” may be asserted in a mortgage foreclosure action, it is “construed narrowly,” and will not apply unless the mortgage was acquired “for the very purpose of bringing . . . suit” on it, to the “exclusion of any other purpose.” (See Red Tulip, LLC v Neiva, 44 AD3d 204, 213 [1st Dept 2007], quoting Bluebird Partners v First Fid. Bank, 94 NY2d 726, 735 [2000], quoting Moses v McDivitt, 88 NY 62, 65 [1882]; see also 1015 Gerard Realty Corp. v A & S Improvements Corp., 91 AD2d 927, 928 [1st Dept 1983].) Assuming that the “defense” may be raised by a pre-answer motion, it does not arise on the allegations of either the complaints or defendant’s affidavit.
At the time of the 1996 and 1997 retainer agreements and mortgages, Code of Professional Responsibility DR 2-106 (a) (22 NYCRR 1200.11 [a]) provided that “[a] lawyer shall not enter into an agreement for, charge or collect an illegal or excessive fee.” (Amendments to the rule in 1999 and 2001 did not affect the quoted provision upon which defendant relies.) Without copies of the retainer agreements, which are not included among the moving papers, defendant cannot establish prima facie that the fees provided are “illegal or excessive.” In any event, whether or not a fee arrangement is “excessive” is highly factual, and defendant has not shown that the fee arrangements reflected in the mortgages were excessive as a matter of law, particularly to the extent payment of any fee was contingent upon successful defense of the mortgage foreclosure action for which plaintiff was retained.
At the time of the 1996 and 1997 retainer agreements and mortgages, Code of Professional Responsibility DR 5-103 (a) (1) (22 NYCRR 1200.22 [a] [1]) provided that “[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he or she is conducting for a client, except that the lawyer may . . . acquire a lien granted by law to secure the lawyer’s fee or expenses.” Defendant cites no judicial decision, in New York or elsewhere, that applies DR 5-103 (a), or a similar local rule, to a mortgage taken to secure legal fees incurred in defending a mortgage foreclosure action.
*315 Defendant relies upon a formal opinion dated July 14, 1988 of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York, which addressed the applicability of DR 5-103 and DR 5-104 to a mortgage on a client’s home obtained to secure payment of a $30,000 retainer to defend the client against a federal investigation. (See Assn of Bar of City of NY Comm on Prof and Jud Ethics Formal Op 1988-7 [1988], reprinted in 1988 WL 490017.) To the extent persuasive, the Committee found in effect that DR 5-103 did not address a lien established by contract between an attorney and client, although the Committee also concluded that the subject mortgage was covered by DR 5-104, which is discussed below.
The court notes that rules adopted in 1993 to govern the conduct of attorneys in domestic relations matters (see 22 NYCRR part 1400) permit an attorney to “take a lien on real property, or otherwise obtain a security interest to secure his or her fee only where,” among other conditions, “the court grants approval for the security interest after submission of an application for counsel fees” (see 22 NYCRR 1400.5 [a] [3]). An attorney’s “disregard for [these] rules, promulgated to address abuses in the practice of matrimonial law and to protect the public, precludes [the attorney] from recovering unpaid legal fees for services rendered to the [client] in the matrimonial action.” (See Behrins & Behrins v Sammarco, 305 AD2d 346, 347 [2d Dept 2003]; see also Gross v Gross, 36 AD3d 318, 322-324 [2d Dept 2006].) One might argue various inferences, not all consistent with each other, from the adoption of the matrimonial rules. Among them, however, is that the acquisition by an attorney of a security interest in a client’s property to secure payment of a fee is not otherwise always prohibited (see Goldman v Goldman, 95 NY2d 120 [2000]), but that such security interests are, at the least, potentially problematic, and deserve scrutiny.
At the time of the 1996 and 1997 retainer agreement and mortgages, Code of Professional Responsibility DR 5-104 (a) (22 NYCRR 1200.23 [a]) provided that “[a] lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure.” (Amendments in 1999 elaborated the requirement of “full disclosure,” and added requirements of substantive fairness and reason *316 ableness, and that the client be advised to seek the advice of independent counsel.) Defendant cites only a California decision (see Hawk v State Bar, 45 Cal 3d 589, 754 P2d 1096 [1988]) and the previously-discussed ethics opinion from the Association of the Bar of the City of New York to support his contention that DR 5-104 applies to a mortgage obtained by a lawyer to secure payment of fees.
There is clear New York authority, however, that an attorney’s loan to a client, with repayment secured by a mortgage on the client’s property, is deemed a “business transaction” for purposes of DR 5-104 (a). (See Sotiriou v Billis, 11 AD3d 672, 673 [2d Dept 2004]; Matter of Cohen, 212 AD2d 286, 287 [4th Dept 1995]; see also Matter of Fen-dick, 31 AD3d 17, 18-19 [4th Dept 2006].) Little material difference appears for this purpose between repayment of a loan secured by a mortgage and payment of legal fees secured by a mortgage, whatever the subject matter of the underlying representation. It is the mortgage that causes the concern, not the nature of the obligation secured.
An attorney/client fee agreement is probably not usually thought of as a “business transaction.” Then again, the fee agreement does not usually give the attorney a security interest in the client’s property. That which is unusual is not necessarily inappropriate. But the mores and customary practices of attorneys in particular respects are not immaterial in assessing professional conduct.
“[T]he law requires that an agreement between client and attorney be construed most favorably for the client.” (Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 177 [1986].) The attorney’s fee is regulated (see Code of Professional Responsibility DR 2-106 [22 NYCRR 1200.11]), and there are requirements for written letters of engagement or signed written retainer agreements (see 22 NYCRR 1215.1 et seq.) and for arbitration of fee disputes (see 22 NYCRR 137.0 et seq.). A statement of client’s rights must be posted in the attorney’s office, assuring the client, among other things, of the attorney’s “independent professional judgment” and “undivided loyalty.” (See 22 NYCRR 1210.1.)
As noted, the rules governing attorneys in domestic relations matters (see 22 NYCRR 1400.1 et seq.), effective in 1993, restrict the attorney’s ability to take a mortgage or other security interest in the client’s property to secure payment of the fee (see 22 NYCRR 1400.5). The rules also require a written retainer *317 agreement (see 22 NYCRR 1400.3) and fee arbitration (see 22 NYCRR 1400.7), and that the client be given a statement of client’s rights and responsibilities (see 22 NYCRR 1400.2). Except for the explicit regulation of security interests, the essentials of these rules have been adapted and applied to attorney/client relations in all matters.
The trend need not be taken as evidence of attorney abuse, but rather recognition that much, perhaps too much, of the profession of law has become a “business transaction.” Application of DR 5-104 in its current terms to an attorney’s acquisition of a security interest in the client’s property adds little more to the attorney’s responsibilities than the requirement that independent counsel be suggested. (See Hawk v State Bar, 45 Cal 3d at 601, 754 P2d at 1103.) The obligation of “full disclosure,” which also appeared in the version of DR 5-104 that is applicable here, is but an element of the attorney’s fiduciary relationship with the client (see Greene v Greene, 56 NY2d 86, 92-93 [1982]), and should come as no surprise to plaintiff.
That is hardly to say, however, that a mortgage is necessarily rendered unenforceable by every violation of DR 5-104 (a). In the only decision addressing the issue that this court has found, the Second Department upheld dismissal of a mortgage foreclosure action, where the attorney plaintiff “failed to provide full disclosure to his client . . . regarding the parties’ divergent interests as borrower and lender, the potential for conflict, and the consequences of a default by [the client], including the possible loss of the mortgaged property at issue,” “coupled with the plaintiff’s failure to advise [his client] to consult with independent counsel regarding the . . . loan, as required by Disciplinary Rule 5-104 (a).” (See Sotiriou v Billis, 11 AD3d at 673.) Under these circumstances, the attorney was “preclude[d] . . . from availing himself of the equitable remedy of foreclosure to enforce the contract.” (Id.)
The cases cited by the Second Department reveal that the basis for denying the attorney the equitable remedy of foreclosure was the attorney’s breach of his fiduciary obligations to the client, as informed by the Code of Professional Responsibility.
“[A]n attorney who seeks to avail himself of a contract made with his client, is bound to establish affirmatively that it was made by the client with *318 full knowledge of all the material circumstances known to the attorney, and was in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him. Under this rule it is not necessary for the client to show that the agreement was obtained by fraud or undue influence on the part of the attorney although, of course, that would make the agreement unenforceable if it were proven. Even in the absence of such misconduct the agreement may be invalid if it appears that the attorney got the better of the bargain, unless he can show that the client was fully aware of the consequences and that there was no exploitation of the client’s confidence in the attorney.” (Greene v Greene, 56 NY2d at 92 [internal quotation marks and citations omitted]; see also Schlanger v Flaton, 218 AD2d 597, 601-602 [1st Dept 1995].)
The ultimate burden is clearly on the attorney.
“Allegations by the client . . . that he did not understand the terms or the effect of the agreement are sufficient, if proven, to entitle him to rescission unless the attorney ‘can convincingly show that [the client] was fully and fairly informed of the consequences of the agreement and the special advantages it gave to [him]’.” (Id. at 602 [emphasis added], quoting Greene v Greene, 56 NY2d at 93.)
The “sophistication of the client” will not relieve the attorney of the duty “to obtain [the client’s] consent after full disclosure.” (See Forest Park Assoc. Ltd. Partnership v Kraus, 175 AD2d 60, 62 [1st Dept 1991].)
Similar considerations justify the rule precluding an attorney who has violated the matrimonial rules from recovering any unpaid fee. (See Gross v Gross, 36 AD3d at 322.) But preclusion is not required where “the conduct of counsel did not evince any of the hallmarks of abuse for which those rules were promulgated.” (See id.)
As for the pending motions, again, defendant’s failure to provide copies of the retainer agreements he admittedly signed renders his showing insufficient to establish prima facie that plaintiff’s mortgages are unenforceable as a matter of law. In any event, defendant does not allege that he “did *319 not understand the terms or the effect of the agreement” (see Schlanger v Flaton, 218 AD2d at 602). Indeed, the realities of the underlying foreclosure actions put him “under extreme pressure” and “in desperate need of legal counsel.” (See affidavit in support ¶¶ 4, 7.) Under these circumstances, his assertions that plaintiff “did not explain to [him] that she and [he] would have differing interests by way of the fee agreement and the mortgage for her fees that was placed on the very same property that she was to defend from the . . . foreclosure” (id. ¶ ¶ 10, 17) are insufficient to shift the burden of coming forward to plaintiff.
There is no showing, moreover, that, except as to the mortgages themselves, plaintiff and defendant might have had “differing interests.” As noted, defendant asserts that the $50,000 mortgage was “contingent” on plaintiffs success in defending the first foreclosure action. But, of course, even in the absence of an express contingency, plaintiffs expectation of recovering her fees from the value of the mortgaged properties depended upon either her success in defending against the foreclosures or the circumstance that the value of the property exceeded the amount of the mortgages being foreclosed. Defendant’s papers are devoid of any showing to the contrary.
Although not necessary to the court’s determination, plaintiff alleges in opposition to these motions that, “[b]ack in 1996, when [she] was retained, there was no equity in the premises.” (See affidavit of Ruth Selby ¶ 5.) She alleges further that “both mortgaged premises were investment properties” for defendant; that the “mortgaged premises was not his residence”; and that, “[a]t the time [she] was retained,” defendant “owned many properties.” (Id. ¶ 7.)
Notices of Pendency
Defendant also moves, pursuant to CPLR 6514 (a), for mandatory cancellation of the notices of pendency, because neither summons was served upon him within 30 days after filing of the notice, as required by CPLR 6512. Plaintiff does not dispute that defendant was not served with the summonses within the statutory time period, but contends that service on other named defendants — namely, the Environmental Control Board, New York City Parking Violations Bureau, Criminal Court of the City of New York, and New York State Department of Taxation and Finance — within the statutory time period is sufficient to sustain the notices of pendency. There is no contention that defendant evaded service. (See *320 Bank of N.Y. v Vandermeulen, 10 AD3d 624, 625 [2d Dept 2004]; Schwartz v Certified Mgt. Corp., 78 AD2d 823 [1st Dept 1980].)
The court notes in the first instance that defendant may move pre-answer for cancellation of the notices of pendency. (See Nos-rep Corp. v Clinton Sec. Corp., 193 App Div 878, 880 [2d Dept 1920].)
CPLR 6514 (a) provides: “The court, upon motion of any person aggrieved and upon such notice as it may require, shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within the time limited by section 6512.” (Emphasis added.) The clause “upon such notice as [the court] may require,” and words of similar import in other statutes, have been interpreted as requiring that the relief requested be sought by order to show cause. (See Smith v Smith, 291 AD2d 828, 828 [4th Dept 2002] [CPLR 5015 (a)]; Wong v Wong, 213 AD2d 399, 400 [2d Dept 1995] [CPLR 321 (b) (2)]; Bynoe v Riverside Church in City of N.Y., 13 Misc 3d 628, 631 [Sup Ct, NY County 2006] [N-PCL 1203 (a)]; Matter of Midway Jewish Ctr., 16 Misc 3d 607, 609 [Sup Ct, Nassau County 2007] [Religious Corporations Law § 208]; Dominguez v Reardon, 14 Misc 3d 882, 884 [Sup Ct, NY County 2007] [CPLR 1207]; Shakir v U.S. Leasing Inti., Inc., 14 Misc 3d 1208[A], 2006 NY Slip Op 52447[U], *13 [Sup Ct, Kings County 2006] [CPLR 321 (b) (2)].)
The pending motions were brought on by notice of motion, not by order to show cause; to the extent that the motions seek cancellation of the notices of pendency, they must be denied for that reason only.
If defendant moves by order to show cause for the same relief, he should address plaintiffs assertion, supported by an uncertified copy of a deed, that on November 9, 2007, defendant transferred title to the property designated 898 Lafayette Avenue to Eliezer Rubin. CPLR 6514 (a) requires that the motion to cancel a notice of pendency be made by a “person aggrieved.”
Defendant would not be a “person aggrieved” by the notice of pendency if he has been “divested of all relevant legal interest in the subject property.” (See Matter of Commercial Bank of Informatics & Computing Technique Dev. Bank Informtechnika v Ostashko, 274 AD2d 516, 517 [2d Dept 2000]; see also NYCTL 1996-1 Trust v King, 13 AD3d 429, 430 [2d Dept 2004]; Bancplus Mtge. Corp. v Galloway, 203 AD2d 222, 223 [2d Dept *321 1994]). If defendant is not the “record owner of the property,” and cannot “demonstrate that [he] suffer[s] a cognizable injury as a result” of the notice of pendency (see Temple Bnai Shalom of Great Neck v Village of Great Neck Estates, 32 AD3d 391, 392 [2d Dept 2006]), he is not a “person aggrieved” for purposes of CPLR 6514.
Defendant’s motions are denied.