OPINION OF THE COURT
William J. Giacomo, J.
Invariably, the most hotly contested issues in matrimonial cases involve the resolution of the financial matters. Indeed, other issues that may arise in a contested matrimonial action, such as grounds and custody, are litigated as leverage for what may be most crucial to some, the financial settlement. Thus, it is rather ironic that even while the parties fight to get the largest portion of the matrimonial estate, “[i]t has been repeatedly recognized that in a fiercely contested case, the costs of the litigation can consume the marital estate of even an affluent couple.” (Charpié v Charpié, 271 AD2d 169, 170-171 [1st Dept 2000].)
In such an environment, it does not require great effort to understand that it can be difficult for the nonmonied spouse, usually the wife,[1] to finance what can be protracted litigation and pay for the services of counsel. Despite the existence of Domestic Relations Law § 237 and its provision for interim fees,[2] both judges and lawyers recognize that in most cases a matrimonial lawyer who undertakes to represent a “nonmonied” spouse may never be compensated. Thus, it can be difficult for the nonmonied spouse to obtain counsel without a very substantial retainer and, in some cases, this can only be obtained via a lien on the marital assets.
*584 Factual and Procedural Background
The parties at bar were married 26 years. Plaintiff commenced this action seeking a divorce in October 2006.[3] This matrimonial action has been extensively litigated and the court previously recommended a settlement it believed was fair to both parties. Unfortunately, it was rejected. Instead, the parties continued to chart their course toward trial when the defendant wife decided to change counsel.
Defendant met with the law firm of Kantrowitz, Goldhamer & Graifman, EC. (hereinafter counsel) to retain its services. Citing the impending trial date and the “complexity of issues” imbued in this lengthy marriage, counsel quoted a contingency retainer of $40,000,[4] an amount that counsel was hopeful would fund the litigation through trial.
Defendant lacked the liquid assets to pay the full retainer, tendering only a partial $15,000 payment, yet counsel was not willing to undertake her representation without payment of the full retainer. In order to meet the full retainer, defendant agreed to tap the considerable net equity[5] that the parties enjoy in the marital residence.
Thus, on January 2, 2008, defendant signed a retainer agreement that included a provision, contingent upon court approval, in which she consented to the filing of a mortgage against her interest in the marital residence, in favor of counsel, as security for the outstanding retainer balance of $25,000 (the proposed mortgage).[6]
Defendant now brings the instant motion pursuant to 22 NYCRR 1400.5 for court approval of the proposed mortgage. Plaintiff opposes the application.
The Matrimonial Rules
Court rules contain administrative standards and policies for the Unified Court System. The rules pertaining to domestic re *585 lations matters, found at 22 NYCRR part 1400 (the matrimonial rules), were “promulgated to address abuses in the practice of matrimonial law and to protect the public” (Julien v Machson, 245 AD2d 122, 122 [1st Dept 1997]; see also Bishop v Bishop, 295 AD2d 382 [2d Dept 2002]).
So stringent, an attorney’s failure to comply with the mandates of the matrimonial rules precludes a recovery of unpaid legal fees for services rendered in the matrimonial action. (Behrins & Behrins v Sammarco, 305 AD2d 346, 347 [2d Dept 2003].) Of particular import here is that the matrimonial rules “apply to all attorneys who . . . undertake to represent a client in a claim, action or proceeding, . . . for divorce” (22 NYCRR 1400.1). They were adopted to govern the conduct of attorneys in domestic relations matters and to protect the clients which they serve.
In the instant proceeding, counsel is moving forward in accordance with the matrimonial rules in that it presents an executed written retainer agreement (see 22 NYCRR 1400.3) which contains a fee arbitration provision (see 22 NYCRR 1400.7) and to which was attached a copy of the statement of client’s rights and responsibilities (see 22 NYCRR 1400.2).
Counsel now seeks approval of a security interest pursuant to 22 NYCRR 1400.5.
The Parties’ Positions
Defendant seeks the court’s approval of the proposed mortgage contending that as long as plaintiff is given notice of the application and the defendant consents and joins in the application, the court should grant same.
Plaintiff disagrees. He argues that the court must deny the application because the proposed mortgage lacks “consideration” as defendant’s counsel has not yet performed any legal services.
In order to resolve the issue at bar the rule must be examined. The matrimonial rule at issue, 22 NYCRR 1400.5, provides that an attorney may obtain a security interest, such as the proposed mortgage, only where:
“(1) the retainer agreement provides that a security interest may be sought;
“(2) notice of an application for a security interest has been given to the other spouse; and
*586 “(3) the court grants approval for the security interest after submission of an application for counsel fees.”[7] (22 NYCRR 1400.5 [a].)
The retainer agreement between counsel and defendant not only provides that a security interest may be sought, the retainer agreement is contingent upon “the Court authorizing the mortgage backed security”; therefore the first step in the three step process delineated by the rule is satisfied. Likewise, the second step is satisfied in that the plaintiff was notified of the within application. Thus, all that is left is for this court to determine if it has the authority and whether it should approve the proposed mortgage over the objection of the plaintiff.[8]
In support of their positions, each party cites the Second Department case of Goldman v Goldman (260 AD2d 537 [2d Dept 1999]).[9] At the commencement of the divorce proceeding in Goldman, the parties owned the marital premises as tenants *587 by the entirety. As security for the payment of counsel fees, the plaintiff gave a mortgage in the amount of $50,000 to her matrimonial attorney. The attorney recorded the mortgage. The defendant was aware of the existence of the mortgage at the time of the divorce trial, but failed to bring it to the attention of the trial court. In the judgment of divorce, the court awarded title to the marital premises to the defendant but, perhaps because it was unaware of the mortgage, made no special provision for the mortgage when equitably distributing the marital estate. Approximately IV2 years after the entry of the judgment of divorce, the defendant moved to discharge the mortgage. The Supreme Court granted the motion, and the plaintiff and her counsel, as intervenor, appealed to the Second Department.
In a sharply divided Court, the majority reversed the Supreme Court.[10] But the history of Goldman v Goldman did not end there, the case was appealed to the Court of Appeals.[11]
In Goldman v Goldman (95 NY2d 120 [2000]), the Court of Appeals, in a unanimous decision, affirmed the Second Department and held that the mortgage on the marital premises given during the pendency of a divorce action was valid as against the defendant who was awarded title to the premises pursuant to the judgment of divorce. The Court rejected the argument that reinstating the “mortgage [was] inequitable and would frustrate the distributive award of the trial court” and noted that defendant knew of the mortgage and failed to bring its existence to the trial court’s attention, which, if he had, would have given the trial court the opportunity to consider “the mortgage in fashioning an equitable distribution award.” (Id. at 122-123.)
Notably, in closing, the Court of Appeals observed that “22 NYCRR 1400.5, effective November 1993, now requires attorneys to seek court approval and to notify the other spouse *588 before obtaining a security interest in marital property (Procedure for Attorneys in Domestic Relations Matters [22 NYCRR] 1400.5).” (Id. at 123.)
The only other case cited by either party is Smulczeski v Smulczeski (40 AD3d 742 [2d Dept 2007]) which defendant asserts stands for the absolute proposition that “where the party joins in the application then it should be granted.” (Affirmation in support of motion 1Í 8.) In Smulczeski, both parties consented to their respective attorneys being granted a security interest and to the filing of a mortgage against their respective interests in the martial property.[12] The trial court denied the applications. On appeal, the Second Department held that “[u]nder the particular facts of this case, including that the relief in question has been requested by the parties themselves, the motion and cross motion should have been granted.” (40 AD3d 742 [2007].) Obviously the fact that the parties consented to the applications was persuasive, but it does not appear from this brief ruling that consent was the only factor considered by the Appellate Division. Furthermore, there is no indication that the parties objected to their adversary’s application.
In the instant matter, plaintiff strongly objects to the relief requested by defendant. Thus, one of the issues this court must decide is what was the purpose, if any, of the notice provision in 22 NYCRR 1400.5? Was it intended to give the adversary spouse the right to block such relief?
Without question, the provision mandating notice to the adversary/nonclient spouse is to protect the interests of the nonclient spouse. Armed with the knowledge of a lien on marital assets, the nonclient spouse can and should request that the court consider the existence of the security interest when awarding equitable distribution of the marital estate. (See Greenfield v Greenfield, 270 AD2d 57, 57 [1st Dept 2000] [with regard to an application pursuant to 22 NYCRR 1400.5, a “security interest requires notice to the other spouse because it may involve property that is marital or otherwise subject to equitable distribution”].) Nonetheless, this court is equally convinced that the purpose of the court rule was not to give the adversary spouse *589 the opportunity to block the retention of counsel and in essence control the choice of counsel.[13]
Having the opportunity to review the parties’ finances during the course of this litigation, the court believes that the equity the parties have in the marital residence will leave each party with sufficient assets to pay his or her own counsel fees. Therefore, whose interest is plaintiff seeking to protect? Whether or not the proposed mortgage lacks consideration should be of no moment to plaintiff as he is not a party to the contract between the defendant and counsel. The argument is misguided.[14]
To be clear, defendant does not seek an award of attorneys fees from plaintiff, at least not at this time. If she were, this court would have the discretion to award reasonable attorneys fees. (Grossman v Grossman, 260 AD2d 602 [2d Dept 1999].) Indeed, the court would have the authority to award fees already billed, and, on a proper showing, would have the authority and discretion to award even prospective fees to prepare for trial. (See Messinger v Messinger, 24 AD3d 631 [2d Dept 2005].)
In the instant matter, counsel makes an application, joined by the defendant in conformance with 22 NYCRR 1400.5. Defendant has presented a retainer agreement that provides that a security interest may be sought, has noticed plaintiff on the application, and has submitted the application to the court for approval.
The court has reviewed and inquired into the parties’ finances. Neither party disputes that they enjoy considerable equity in the marital home of approximately $1 million. The record before the court does not indicate that only one party will enjoy all of this equity when the marital estate is equitably distributed. Furthermore, the defendant submits that she has no other sources from which to pay the retainer of her chosen counsel. There is no reason to deny the application.
Conclusion
Based on all the foregoing, this court approves the security interest sought by counsel by way of the proposed mortgage. It holds that New York’s matrimonial rule, 22 NYCRR 1400.5, *590 does not require that the security interest be supported by “consideration” such as legal fees already incurred and may be given to secure future legal services. In order for such an application to be granted the following must be adhered to: (1) the retainer agreement must provide that a security interest may be sought, (2) notice of the court application for a security interest must be given to the other spouse and (3) the court must inquire into the finances of the parties. If such is complied with, the court may approve a security interest for legal fees not yet incurred. The key to approval is the notice provision affording all parties an opportunity to be heard. In such case, the court is placed in the proper position to protect the interest of the parties and counsel since it allows the court to consider the existence and effect of such mortgage when fashioning equitable distribution in the case.

. While certainly not intentional, the existence of gender-biased discrimination in our contested matrimonial system nonetheless exists and has been noted by the Task Force on Gender in the Courts (see Unified Ct Sys, Off of Ct Admin, Report of NY Task Force on Women in Cts, at 103-106 [1986]).

. Domestic Relations Law § 237 (a) provides this court with the vehicle to award attorneys fees to the less monied spouse. The intent of the statute, as described by the Court of Appeals, was to obtain “litigational parity” and “to redress the economic disparity between the monied spouse and the non-monied spouse.” (O’Shea v O’Shea, 93 NY2d 187, 190 [1999].) Empowering trial courts to “level the playing field,” the Court of Appeals has obligated the trial courts to “see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant’s wallet.” (Id. at 190.)

. In their preliminary conference order the parties claimed that plaintiff was a stockbroker, who reported yearly earnings in excess of $302,000 and defendant was a hair colorist who reported earnings of approximately $9,600 per annum plus tips. At a recent appearance before this court, plaintiff advised that he was laid off from his job and has been unable, to date, to secure new employment.

. Of the $40,000 retainer, $25,000 is a “minimum fee” which is permissible under the matrimonial rules. (See 22 NYCRR 1400.4.)

. According to the parties, the marital residence, their most significant asset, has a net equity of approximately $1 million.

. It is noted that the amount of the proposed mortgage is equal to the minimum fee provided for in the retainer agreement.

. What constitutes the “submission of an application for counsel fees” pursuant to 22 NYCRR 1400.5? The security interest delineated by this rule runs between an attorney and his or her own client, not the adversary spouse; therefore the “application for counsel fees” is not the type addressed in Domestic Relations Law § 237. Outgoing attorneys make applications for counsel fees. A charging or retaining lien as permitted by Judiciary Law § 475 is designed to insure that an outgoing attorney is paid for services already rendered; a “retaining lien” attaches to the papers and property of the client in the lawyer’s possession until payment is made or guaranteed, while a “charging hen” applies to the proceeds in a given action. But the rule is not specific to outgoing attorneys. Indeed, the Third Department questioned whether the rule applied when “the attorney-client relationship has been terminated and the attorney thereafter seeks to collect the fee.” (Nosonowitz v Nosonowitz, 284 AD2d 586, 587-588 [3d Dept 2001] [Nosonowitz, interestingly, involved outgoing counsel in this matter for Mrs. Iriarte].) Fees between an attorney and their own client are not generally scrutinized/subject to approval unless an issue arises between that attorney and client regarding the fees at which time “as a matter of public policy, courts pay particular attention to fee arrangements between attorneys and their clients . . . [and] [a]n attorney has the burden of showing that a fee contract is fair, reasonable, and fully known and understood by the client.” (Jacobson v Sassower, 66 NY2d 991, 993 [1985].) Here, defendant joins in the application for the security interest. If the matrimonial rules intended to prohibit the instant application or were to apply to only one type of application for attorneys fees, the rules would have been written as such. This court sees nothing in 22 NYCRR 1400.5 that specifically prohibits the type of application sought at bar on its face.

. The court is given the authority to approve, or not, the security interest after submission of an application for attorneys fees. The inclusion of this discretionary provision in the rule belies the defendant’s position which amounts to a rubber stamp approval if the mandates of the first two parts of 22 NYCRR 1400.5 (a) are met.

. Goldman v Goldman arose prior to the effective date of 22 NYCRR 1400.5, which was November 1993.

. Plaintiff is adamant that the Second Department’s ruling in Goldman v Goldman “stands for the proposition that a mortgage to secure future legal services, as in this case, requires consideration” and because the attorney mortgagor “did not receive consideration at the time of the execution of the mortgage” the mortgage was discharged. (See plaintiff’s affidavit f 2.) Unfortunately, plaintiff seems to be mistakenly relying on the dissent which proposed that because the “mortgage was given to secure future legal services and the mortgagor did not receive consideration at the time of the execution of the mortgage” the mortgage interest was properly discharged by the trial court. (260 AD2d at 540.) Clearly, the majority in Goldman, as well as in the Court of Appeals (addressed infra), was not concerned with the issue of whether there was adequate consideration.

. Neither party brings to this court’s attention (as they should have) that the Goldman case went up to the Court of Appeals.

. Plaintiff sought approval of a $111,030.76 mortgage against her interest in the marital residence; the defendant separately sought leave for his attorney to file a mortgage in the amount of $99,585.43 against his interest in the marital residence.

. Perhaps this was not plaintiffs intent, but his objection, if sustained, would result in defendant being unable to retain the counsel of her choice.

. Plaintiff is attempting to avail himself of the protections intended to protect a client from the conduct of his or her own attorney. (See generally Gross v Gross, 36 AD3d 318 [2d Dept 2006].)