OPINION OF THE COURT
Michael A. Ciaffa, J.
*169 Defendant moves for an order dismissing the instant action pursuant to CPLR 3211 and 3212. Plaintiff opposes the motion.
The complaint in this case, brought by plaintiff as an assignee, alleges that the assignor’s vehicle required extensive repairs following an auto accident, and that defendant was required to pay the fair and reasonable cost of such repairs under an insurance policy covering the vehicle. Defendant allegedly refused to make payment for such repairs, as the insurance policy required.
According to defendant’s moving papers, plaintiff, an auto repair shop, acquired the assignment for the “very purpose” of bringing suit on the claim. By so acting, plaintiff allegedly violated New York’s champerty statute (Judiciary Law § 489) as a matter of law. If the assignment was obtained for such an illegal purpose, defendant contends the assignment would necessarily be judged invalid, and the plaintiff would thus lack standing to bring the action.
Defendant’s argument raises a weighty and complex issue under New York law. The ancient doctrine of “champerty,” now codified in Judiciary Law § 489, prohibits the taking by assignment of a “thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon.” (Judiciary Law § 489 [1].) Defendant’s allegations of plaintiffs wrongdoing fit squarely within the literal language of this prohibition.
Historically, the doctrine of champerty grew out of an odious practice by medieval speculators akin to “the ‘sin’ of usury.” (See Bluebird Partners v First Fid. Bank, 94 NY2d 726, 734 [2000].) In its most classic form, a speculator would buy a claim for a fraction of its potential value and agree to bear the expenses of suit in the expectation of earning a windfall profit if the suit succeeded. (Id.) English law strongly disapproved of the practice. (Id.) As explained in one early leading treatise: medieval champerty laws were founded on the principle “that no encouragement should be given to litigation” by a stranger “to enforce those rights which others are not disposed to enforce.” (4 Kent, Commentaries on American Law, at 509 n (c) [Comstock ed 1867], quoted in Elliott Assoc., L.P. v Republic of Peru, 12 F Supp 2d 328, 350 [SD NY 1998], read on other grounds 194 F3d 363 [2d Cir 1999].) Such lawsuits, according to Blackstone, “pervert[ed] the remedial process of the law into an engine of oppression.” (4 Blackstone, Commentaries on the Law of England, at 134, quoted in Elliot Assoc., L.P., 12 F Supp 2d at 350.)
*170 The early precedents from this state’s courts interpreted the doctrine in a narrower fashion, largely directed toward attorneys engaged in the practice of filing suits “merely as a vehicle for obtaining costs, which, at the time, included attorneys’ fees” (.Bluebird Partners at 734.) However, from at least 1907 forward, the prohibition against champerty has explicitly applied to assignments obtained by both nonlawyers and corporations. (Id.)
Without doubt, under current New York law, the statutory prohibition is applicable wherever an assignment is obtained “for the very purpose of bringing . . . suit.” (See id. at 735, quoting Moses v McDivitt, 88 NY 62, 65 [1882].) Pending further guidance from the Court of Appeals, it appears that the prohibition applies equally to cases where pursuit of litigation is “at least . . . the primary purpose for . . . entering into the transaction.” (See Bluebird Partners at 736; but cf. Trust for Certificate Holders of Merrill Lynch Mtge. Invs., Inc. Mtge. Pass-Through Certificates, Series 1999-C1, ex rel. Orix Capital Mkts., LLC v Love Funding Corp., 556 F3d 100, 111 [2d Cir 2009] [certifying issue for New York Court of Appeals “whether a finding of a ‘primary’ champertous intent is legally sufficient to void an assignment under § 489(1), or whether a further finding is required that the proscribed intent was (the) ‘sole’ (purpose)”].)
In the instant case, defendant points to a series of indicia that the assignment to plaintiff “was clearly designed to buy a cause of action and, in fact, that is its only purpose.” Defendant’s papers recite the long history of disputes and disagreements between the parties over the applicable labor rate for insured auto repairs, and their inability to resolve the disputes through other means. In the face of this history, defendant observes that plaintiff acquired the assignment just two weeks before the instant action was commenced, and contends from such circumstances that “[t]he absolute, undeniable truth is that the ‘assignment’ was created [to] pursue litigation and raise, yet again, its dispute as to the labor rate allowed by Allstate.” Indeed, according to defendant, “[t]he only purpose for the assignment is to enable Mid Island to litigate the labor rate.”
The facts cited by defendant do not appear to be in dispute. However, the heart of the issue here — whether an assignment was taken for the sole or primary purpose of bringing suit on the claim — rarely is amenable to summary adjudication. (See e.g. Bluebird Partners, supra.) Although courts sometimes have “been willing to find that an action is not champertous as a *171 matter of law,” they have been “hesitant to find that an action is champertous as a matter of law,” particularly in the context of an assignment taken as part of a complicated and sophisticated business transaction. (See Bluebird Partners at 734-735; see also Trust for Certificate Holders, supra.)
Even in cases involving “subsets of uncontested facts,” the issue of intent typically “boils down to a weighing of evidence or a credibility determination.” (Bluebird Partners at 738.) As the Court of Appeals has often reiterated: “the question of intent and purpose of the purchaser or assignee of a claim is usually a factual one to be decided by the trier of facts.” (Id., quoting Fairchild Hiller Corp. v McDonnell Douglas Corp., 28 NY2d 325, 330 [1971], citing Sprung v Jaffe, 3 NY2d 539, 544 [1957].)
In the instant case, further evidence is required to determine whether, on balance, some purpose other than litigation induced plaintiff to obtain the assignment. (Cf. Fairchild Hiller Corp., supra.) Arguably, obtaining assignments for leverage purposes in the context of the parties’ broader disputes might render its intent to sue “merely incidental and contingent.” (Id. at 330.) But that finding, in the court’s view, must await further factual exploration.
Accordingly, the court holds that it is not able to determine the validity of the champerty defense without a hearing. The court further determines that a prompt hearing of the issues raised on the motion is appropriate for the expeditious disposition of the controversy. (See CPLR 3212 [c].) Accordingly, a hearing shall be held on July 27, 2009, limited to the issue of champerty.