*1167 OPINION OF THE COURT
Michael A. Ciaffa, J.
Posthearing Decision on Champerty
The court’s prior decisions in this case addressed, at some length, the difficult and complex legal issues presented by defendant’s champerty defense. In its decision dated June 10, 2009 (25 Misc 3d 168 [2009]), the court ruled that it could not determine the validity of the champerty defense without a hearing. A subsequent decision, dated July 16, 2009 (24 Misc 3d 1223[A], 2009 NY Slip Op 51580[U] [2009]), set forth the “burden-shifting protocol” that would be applied at the hearing. The court’s third decision, dated October 29, 2009, reiterated that its inquiry “remains a factual one.” Finally, in light of the intervening Court of Appeals decision in the Love Funding case (Trust for Certificate Holders of Merrill Lynch Mtge. Invs., Inc. Mtge. Pass-Through Certificates, Series 1999-C1 v Love Funding Corp., 13 NY3d 190 [2009]), the court made plain that the latter decision “will certainly guide this Court’s inquiry.”
Consistent with these rulings, the court heard testimony and received evidence from the parties on two hearing dates. The testimony was particularly helpful in clarifying the critical factual issue — namely, plaintiffs intent in obtaining the assignment. Posthearing memoranda were also submitted. Counsel for both parties are to be commended for providing the court with forceful and useful presentations of their respective contentions.
The hearing testimony, as a whole, confirms that the assignment at issue was clearly intended as a tool, to be used by plaintiff in its ongoing dispute over the labor rate paid by Allstate for covered auto repairs. It is equally evident that litigation was the intended vehicle through which plaintiff would be using the assignment.
According to plaintiffs assignor, Robert Hickey, he signed the assignment at plaintiffs request. After learning that he could be held liable for the difference between the labor rate paid by Allstate and the rate charged by plaintiff, he agreed to let plaintiff step in his shoes. “[B]asically, they were going to try [to] get the money [from Allstate], so I wouldn’t have to pay it.”
James Jarocki, a repair adjustment supervisor, testified that the Hickey claim was one of 47 similar lawsuits brought by plaintiff as an assignee. The multiple lawsuits, taken together, establish quite clearly that plaintiff was obtaining assignments *1168 with the intention of suing Allstate. However, the practice must be viewed in the broader context of an ongoing, unresolved disagreement over labor rates. In one telling exchange between an Allstate adjuster, John DiGiose, and plaintiffs principal, Robert Jesberger, DiGiose admitted he told Jesberger that if plaintiff didn’t like Allstate’s labor rate, it should sue Allstate. DiGiose was not joking.
Brian McGauvern, plaintiffs general manager, attested that his company had failed to negotiate an agreed price with Allstate in a large percentage of cases. His company tried to involve the New York State Insurance Department in the dispute, to no avail. “Civil remedies” appeared to be plaintiffs only viable option.
Most importantly, according to plaintiffs proof, taking assignments from customers was the only alternative that made business sense. Other approaches, such as asking customers for the difference, risked the loss of their business on future matters. Attempts to negotiate with Allstate on the customer’s behalf were constantly rebuffed. Prior to taking the assignment, Mc-Gauvern claimed, “[w]e made every attempt to negotiate . . . We called everybody.” Plaintiff received “[n]o response. No help.”
In the final analysis, the court must make a difficult choice between the public policy arguments advanced by each side. Defendant contends that plaintiff is guilty of “stirring up litigation” by taking assignments from car repair customers solely for the purpose of suing defendant over the parties’ ongoing labor rate dispute. Plaintiff, in turn, argues that since it had “a pre-existing proprietary interest” in obtaining payment for repairs to its customer’s cars, its acquisition of the assignment was for a proper business purpose, and therefore was not champertous.
Guided by the Court of Appeals decision in Love Funding, the court concludes that plaintiff met its burden of proving that its intent and purpose in obtaining the assignment was legitimate. A key difference between a legitimate and an illegitimate assignment lies “between one . . . acquire[d] ... to make money from litigating it and one . . . acquire [d] ... to enforce . . . [and] protect [the assignee’s] own interest^]” (Love Funding, 13 NY3d at 200-201). While it may be true, as argued by defendant, that plaintiff took the assignment with the intent of “stirring up” and “creat[ing]” litigation in cases where “it was not going to reach an agreed price with Allstate” (defendant’s *1169 mem at 15-16), it is also true that plaintiffs auto repair business and defendant’s involvement in claims settlement gave plaintiff a “preexisting proprietary interest” in getting paid a fair labor rate from defendant. (See Love Funding at 202.)
On balance, under the formulation of the champerty doctrine announced by the Court of Appeals, the court finds that plaintiff proved that pursuit of that legitimate property interest justified its obtaining an assignment from Mr. Hickey. Even if plaintiff knew or believed that litigation over the claim would be inevitable, the court cannot say that “stirring up litigation” was the sole or primary purpose of the assignment. Nor is this a case where an assignment was taken principally in the hope that it would enable the assignee to obtain a windfall profit. (See M.V.B. Collision Inc. v Allstate Ins. Co., 25 Misc 3d 168 [2009]; cf. DNS Equity Group Inc. v Lavallee, 26 Misc 3d 1228[A], 2010 NY Slip Op 50298[U] [Nassau Dist Ct 2010].)
Finally, nothing herein is intended to address defendant’s alternative argument that “because Mr. Hickey had no right to recover the additional amounts sought for the repair of his vehicle, he had no claim to assign at all.” To the extent that issue may remain in this case, it was outside the scope of the champerty hearing.
For these reasons, defendant’s motion to dismiss the complaint on grounds of champerty is denied.