[918 NE2d 889, 890 NYS2d 377]

Trust for the Certificate Holders of the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C1, by and through ORIX Capital Markets, LLC, as Master Servicer and Special Servicer, Appellant, v Love Funding Corporation, Respondent.

Argued September 9, 2009; decided October 15, 2009

**POINTS OF COUNSEL**

*Hogan & Hartson LLP*, New York City (*Ira M. Feinberg* and *Andowah Newton* of counsel), and *Hogan & Hartson LLP* (*Lorane F. Hebert*, of the District of Columbia bar, admitted pro hac vice, of counsel), for appellant. I. The history of the champerty

statute and relevant precedent demonstrate that the scope of the statute is extremely narrow. (*Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Coopers & Lybrand v Levitt,* 52 AD2d 493; *Ehrlich v Rebco Ins. Exch.,* 225 AD2d 75; *In re Primus,* 436 US 412; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325; *Moses v McDivitt,* 88 NY 62; *Zindle, Inc. v Friedman's Express, Inc.,* 258 App Div 636; *Hospital Credit Exch., Inc. v Shapiro,* 186 Misc 658; *Knobel v Estate of Eugene A. Hoffman, Inc.,* 105 Misc 2d 333.) II. To constitute champerty, an assignment of a claim must be taken for the "sole" purpose of enabling the assignee to bring suit. (*Moses v McDivitt,* 88 NY 62; *Sprung v Jaffe,* 3 NY2d 539; *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325; *People v Francis,* 45 AD2d 431, 38 NY2d 150; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Limpar Realty Corp. v Uswiss Realty Holding,* 112 AD2d 834; *Cavendish Traders, Ltd. v Nice Skate Shoes, Ltd.,* 117 F Supp 2d 394.) III. As a matter of law, it is not champertous for an assignee to take an assignment of a claim to protect or vindicate its own legitimate preexisting interests. (*Moses v McDivitt,* 88 NY 62; *Promenade v Schindler El. Corp.,* 39 AD3d 221; *Williams Paving Co. v United States Fid. & Guar. Co.,* 67 AD2d 827; *American Express Co. v Control Data Corp.,* 50 AD2d 749; *American Bag & Metal Co. v Alcan Aluminum Corp.,* 115 AD2d 958; *Coopers & Lybrand v Levitt,* 52 AD2d 493; *Bellarno Intl. v Irving Trust Co.,* 165 AD2d 809; *Limpar Realty Corp. v Uswiss Realty Holding,* 112 AD2d 834; *Red Tulip, LLC v Neiva,* 44 AD3d 204; *Suraleb, Inc. v International Trade Club, Inc.,* 13 AD3d 612.) IV. An assignee who takes an assignment of a claim to seek compensation for an alleged wrong does not commit champerty merely because the assignee potentially stands to recover more than the amount needed to make the assignee "whole." (*Promenade v Schindler El. Corp.,* 39 AD3d 221; *JMD Holding Corp. v Congress Fin. Corp.,* 4 NY3d 373; *Hooper Assoc. v AGS Computers,* 74 NY2d 487; *Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust,* 43 AD3d 56; *Coopers & Lybrand v Levitt,* 52 AD2d 493; *Moses v McDivitt,* 88 NY 62; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Wightman v Catlin,* 113 App Div 24; *M. W. Zack Metal Co. v International Nav. Corp. of Monrovia,* 112 AD2d 865; *American Bag & Metal Co. v Alcan Aluminum Corp.,* 115 AD2d 958.) V. Important public policy considerations support a narrow construction of the champerty statute. (*Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Hooper*

*Assoc. v AGS Computers,* 74 NY2d 487; *Perchinsky v State of New York,* 232 AD2d 34; *DiPerna v American Broadcasting Cos.,* 200 AD2d 267; *Estate of Nasser v Port Auth. of N.Y. & N.J.,* 155 AD2d 250; *M. W. Zack Metal Co. v International Nav. Corp. of Monrovia,* 112 AD2d 865; *Promenade v Schindler El. Corp.,* 39 AD3d 221; *Coopers & Lybrand v Levitt,* 52 AD2d 493.)

*Bryan Cave LLP* (*Alec W. Farr,* of the District of Columbia bar, admitted pro hac vice, and *Nikki A. Ott* of counsel) and *Bryan Cave LLP,* New York City (*Michael G. Biggers* of counsel), for respondent. I. Judiciary Law § 489 (1), as correctly applied by the trial court, turns on a factual finding that the reason a corporation took an assignment of a claim was to bring a suit. (*Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325; *Matter of Hernandez v Barrios-Paoli,* 93 NY2d 781; *People v Tatta,* 196 AD2d 328; *Prego v City of New York,* 147 AD2d 165; *Moses v McDivitt,* 88 NY 62; *Sprung v Jaffe,* 3 NY2d 539; *Bennett v Supreme Enforcement Corp.,* 250 App Div 265, 275 NY 502; *American Rest. China Mfrs. Assn. v Corning Glass Works,* 24 Misc 2d 634.) II. The champerty statute has not been and should not be interpreted to add a requirement that a court must find "sole intent." (*Country-Wide Ins. Co. v National R.R. Passenger Corp.,* 6 NY3d 172; *Matter of Southeast Banking Corp.,* 93 NY2d 178; *People v Lopez,* 73 NY2d 214; *Foley v State of New York,* 294 NY 275; *Monahan v Weichert,* 82 AD2d 102; *Moses v McDivitt,* 88 NY 62; *Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325; *Ehrlich v Rebco Ins. Exch.,* 225 AD2d 75; *Sprung v Jaffe,* 3 NY2d 539.) III. The existence of losses on a debt instrument in which a corporate assignee of a claim holds an interest does not preclude a finding of champerty. (*Moses v McDivitt,* 88 NY 62; *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325; *Promenade v Schindler El. Corp.,* 39 AD3d 221; *Limpar Realty Corp. v Uswiss Realty Holding,* 112 AD2d 834; *Red Tulip, LLC v Neiva,* 44 AD3d 204; *American Express Co. v Control Data Corp.,* 50 AD2d 749; *American Bag & Metal Co. v Alcan Aluminum Corp.,* 115 AD2d 958; *Coopers & Lybrand v Levitt,* 52 AD2d 493; *Bellarno Intl. v Irving Trust Co.,* 165 AD2d 809; *Williams Paving Co. v United States Fid. & Guar. Co.,* 67 AD2d 827.) IV. Facts showing that a party has acquired an assignment to collect more damages through a new litigation than it had demanded to settle with the assignor, or that the assignment includes indemnification rights for attorneys' fees and costs, support a factual finding of champerty, but do not compel such

a finding as a matter of law. V. Applying Judiciary Law § 489 (1) to the narrow set of facts presented here does not contravene New York public policy. (*Matter of Steinberg v Steinberg,* 18 NY2d 492; *People v Gray,* 84 NY2d 709; *Village of Brockport v Calandra,* 191 Misc 2d 718; *Ruxton Towers v Floratos,* 23 Misc 3d 22; *Town of Smithtown v Haynes,* 278 AD2d 312; *Matter of Highland Care Ctr. v DeBuono,* 267 AD2d 668; *Village of Upper Nyack v Christian & Missionary Alliance,* 143 Misc 2d 414; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Elliott Assoc., L.P. v Republic of Peru,* 12 F Supp 2d 328.)

*Richards Kibbe & Orbe LLP,* Washington, D.C. (*Lucinda O. McConathy* of counsel), and *Richards Kibbe & Orbe LLP,* New York City (*Brian S. Fraser* of counsel), for Loan Syndications & Trading Association, Inc., amicus curiae. I. An assignment of a claim as part of a bundle of rights constituting a loan is not champerty. (*Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Ehrlich v Rebco Ins. Exch.,* 225 AD2d 75; *In re Primus,* 436 US 412; *Moses v McDivitt,* 88 NY 62; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Fairchild Hiller Corp. v McDonnell Douglas Corp.,* 28 NY2d 325; *Red Tulip, LLC v Neiva,* 44 AD3d 204; *Hill Intl. v Town of Orangetown,* 290 AD2d 416; *Richbell Info. Servs. v Jupiter Partners,* 280 AD2d 208; *Limpar Realty Corp. v Uswiss Realty Holding,* 112 AD2d 834.) II. The three certified questions should be answered to permit the assignment of claims. III. Sound policy supports the assignability of claims related to syndicated corporate loans.

*Northern Manhattan Improvement Corporation Legal Services,* New York City (*Kenneth Rosenfeld, James Baker* and *Matthew J. Chachère* of counsel), *Cardozo Bet Tzedek Legal Services* (*Leslie Salzman* of counsel), *CAMBA Legal Services, Inc.,* Brooklyn (*Kathleen A. Masters* and *Matthew Chedler* of counsel), *Empire Justice Center,* Rochester (*Bryan D. Hetherington* of counsel), and *Urban Justice Center,* New York City (*Harvey Epstein* of counsel), for Northern Manhattan Improvement Corporation and others, amici curiae. I. Consumer debt litigation abuses are rampant in New York. (*Securities & Exch. Commn. v Merchant Capital, LLC,* 483 F3d 747; *PRA III, LLC v Gonzalez,* 54 AD3d 917.) III. Judiciary Law § 489 applies—and only applies—to purchases of claims of under $500,000 by entities with no preexisting interest therein for the primary purpose of collecting through actual or threatened litigation. (*Bluebird Partners v First Fid. Bank,* 94 NY2d 726; *Irwin v Curie,* 171 NY

409; *Sedgwick v Stanton,* 14 NY 289; *Fowler v Callan,* 102 NY 395; *Sprung v Jaffe,* 3 NY2d 539; *Elliott Assoc., L.P. v Banco de la Nacion,* 194 F3d 363; *Bennett v Supreme Enforcement Corp.,* 250 App Div 265, 275 NY 502; *Matter of Clark,* 184 NY 222; *Moses v McDivitt,* 88 NY 62; *Coughlin v New York Cent. & Hudson Riv. R.R. Co.,* 71 NY 443.)

**OPINION OF THE COURT**

PIGOTT, J.

The United States Court of Appeals for the Second Circuit has certified to us questions relating to Judiciary Law § 489, New York's champerty statute. We hold that a corporation or association that takes an assignment of a claim does not violate Judiciary Law § 489 (1) if its purpose is to collect damages, by means of a lawsuit, for losses on a debt instrument in which it holds a preexisting proprietary interest.

I.

Love Funding Corporation (Love Funding), a commercial mortgage-banking corporation, entered into a Mortgage Loan Purchase Agreement (the Love MLPA) with Paine Webber Real Estate Securities Inc. (Paine Webber) on April 23, 1999. Under the Love MLPA, Love Funding originated mortgage loans, evaluating the borrowers and performing due diligence, while Paine Webber provided financing and was ultimately assigned the loans for securitization. Love Funding received a fee of 1% of the principal amount of each loan.

In the Love MLPA, Love Funding represented that the loans were not in default. Love Funding further promised that in the event it breached any representation or warranty, and upon prompt written notice, it would cure the breach or, at Paine Webber's option, repurchase the affected mortgage loan. Significantly, in section 9.14 (a) of the Love MLPA, Love Funding agreed to indemnify Paine Webber "from and against all demands, claims or asserted claims, liabilities or asserted liabilities, costs and expenses, including reasonable attorneys' fees, incurred . . . in any way arising from or related to any breach."

In July 1999, Love Funding made a $6.4 million loan to Cyrus II Partnership, secured by a mortgage on an apartment complex, the Arlington Apartments, in Harvey, Louisiana (Arlington Loan). The loan was assigned to Paine Webber under the Love MLPA. As consideration, Love Funding received its 1% fee.

Paine Webber sold the Arlington Loan to Merrill Lynch Mortgage Investors, Inc. on November 1, 1999, as part of a larger securities transaction involving numerous mortgage loans. Under the governing Mortgage Loan Purchase Agreement (the Merrill Lynch MLPA), Paine Webber made representations and warranties concerning the loans, including ones substantively similar to those made by Love Funding in the Love MLPA.

The loans were then securitized, under a pooling and servicing agreement in which certificates secured by the underlying mortgages were issued, and a trust created for the holders of those certificates, who would receive interest payments generated by the loans. The trust was denominated the Trust for the Certificate Holders of the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C1 (the Trust). ORIX Capital Markets, LLC was named Master Servicer and Special Servicer.

The Trust declared the Arlington Loan to be in default in March 2002, for reasons not directly pertinent to this case, and it commenced a mortgage foreclosure action in Louisiana state court.[1] It was discovered that Cyrus's principals had committed fraud in obtaining the Arlington Loan. The Trust informed Paine Webber's successor in interest, UBS.[2] In the fall of 2002, the Trust commenced litigation against UBS in federal court and in state courts in Texas and New York, related to over 30 loans that Paine Webber had sold. With respect to the Arlington Loan, the Trust's theory was that Cyrus's fraud had put the loan in default from the outset, so that Paine Webber (and, hence, UBS) had necessarily breached its representation in the Merrill Lynch MLPA. By all accounts, the litigation was intense and expensive, with the Trust and UBS purportedly spending some $7 million and over $30 million respectively.

On September 13, 2004, the Trust and UBS settled, with UBS agreeing to pay the Trust $19.375 million with regard to various loans deposited in the Trust. With respect to the Arlington

---

1. In October 2004, the Arlington Apartments complex was sold for some $6.5 million, from which the Trust received about $5.9 million. That December, the Trust was awarded approximately $10.9 million in damages against Cyrus and its principals, though it is not clear how much of that amount is collectible.

2. In November 2000, following a merger of their parent companies, UBS succeeded in interest to Paine Webber's rights and obligations under the Love MLPA.

Loan, however, UBS assigned to the Trust, as consideration for its release, all its rights under the Love MLPA: "each and every of the representations and warranties, and related remedies for breach thereof . . . including but not limited to the remedies set out in section 9.14" of the Love MLPA.[3]

In November 2004, a representative of the Trust approached Love Funding's principals, by telephone and in writing, demanding that Love Funding either cure its breaches of representations and warranties affecting the Arlington Loan or repurchase the loan. According to Love Funding, the Trust representative demanded $10 million to settle. At the same time, the Trust commenced an action against Love Funding in Supreme Court, New York County, alleging that it had breached its representations and warranties that the Arlington Loan was not in default at the time of closing.

The Trust's action was removed to federal court. Both the Trust and Love Funding moved for summary judgment. On October 11, 2005, the United States District Court for the Southern District of New York granted the Trust's motion for summary judgment to the extent of holding that Love Funding breached the Love MLPA. Although denying Love Funding's cross motion for summary judgment, the District Court allowed Love Funding to amend its answer to assert a champerty defense.

In a February 27, 2007 decision, the District Court held that the Trust had "accepted the assignment of the Love MLPA with the primary purpose of bringing a lawsuit against Love Funding. Because the assignment is void for champerty, the Trust is not entitled to any award of damages" (499 F Supp 2d 314, 325 [2007]). The District Court noted that the assignment was the only consideration the Trust took in exchange for releasing UBS with respect to the Arlington Loan, and observed that the Trust had urged the court to find that Love Funding must indemnify the Trust for some of the legal fees UBS incurred defending itself against the Trust. Dismissing the Trust's efforts at settlement as a sham, the District Court concluded that the Trust's primary purpose was to secure a means of suing Love Funding, and dismissed its action.

On appeal, the Trust argued principally that a finding that it had accepted the assignment with the intention of suing Love

---

**3.** The agreement memorializing the "ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION" was signed by the parties on November 18, 2004, but by its terms had become effective on September 13, 2004.

Funding is insufficient as a matter of law for champerty. The United States Court of Appeals for the Second Circuit decided that resolution of the Trust's appeal depended on significant and unsettled questions of New York law. The Second Circuit certified to us, and we accepted, the following questions:

"1. Is it sufficient as a matter of law to find that a party accepted a challenged assignment with the 'primary' intent proscribed by New York Judiciary Law § 489 (1), or must there be a finding of 'sole' intent?

"2. As a matter of law, does a party commit champerty when it 'buys a lawsuit' that it could not otherwise have pursued if its purpose is thereby to collect damages for losses on a debt instrument in which it holds a pre-existing proprietary interest?

"3. (a) As a matter of law, does a party commit champerty when, as the holder of a defaulted debt obligation, it acquires the right to pursue a lawsuit against a third party in order to collect more damages through that litigation than it had demanded in settlement from the assignor?

"(b) Is the answer to question 3 (a) affected by the fact that the challenged assignment enabled the assignee to exercise the assignor's indemnification rights for reasonable costs and attorneys' fees?" (556 F3d 100, 114 [2d Cir 2009].)

We answer the second certified question, and both parts of the third certified question, in the negative. Because—as the Second Circuit itself hinted—"the critical issue to assessing the sufficiency of the champerty finding is not the denomination of the Trust's intent as 'primary' or 'sole,' but the purpose behind its acquisition of rights that allowed it to sue Love Funding" (556 F3d at 111), we find it unnecessary to answer the first certified question.

## II.

The doctrine of champerty developed "to prevent or curtail the commercialization of or trading in litigation" (*Bluebird Partners v First Fid. Bank*, 94 NY2d 726, 729 [2000]). The doctrine, which has ancient and medieval roots (*see Bluebird Partners*, 94 NY2d at 733-734; Martin, *Syndicated Lawsuits: Illegal Champerty or New Business Opportunity?*, 30 Am Bus LJ 485

[1992]; Radin, *Maintenance by Champerty*, 24 Cal L Rev 48 [1936]), is currently codified in Judiciary Law §§ 488-489, which derive from sections 274 and 275 of the former Penal Law. The latter section applied to all corporations and associations a proscription that had long governed legal practitioners (*see* Act of June 9, 1939, L 1939, ch 822, § 13, at 2058). Under Judiciary Law § 489 (1), a corporation or association may not "solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon."[4] The champerty statutes are directed at preventing the "strife, discord and harassment" that would be likely to ensue "from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon" (*Fairchild Hiller Corp. v McDonnell Douglas Corp.*, 28 NY2d 325, 329 [1971]).

The term "champerty" referred in the Middle Ages to any "situation where someone bought an interest in a claim under litigation, agreeing to bear the expenses but also to share the benefits if the suit succeeded" (*Bluebird Partners*, 94 NY2d at 734). In New York, however, the prohibition of champerty has always been "limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs" (*id.*).[5] Our earliest cases and those of the Court of Chancery clearly demonstrate this narrow scope.

In *Baldwin v Latson* (2 Barb Ch 306 [1847]), the Court of Chancery explained that the purpose of New York's champerty statute "was to prevent attorneys and solicitors from purchasing debts, or other things in action, for the purpose of obtaining costs by a prosecution thereof, and [it] was never intended to prevent the purchase for the honest purpose of protecting some other important right of the assignee" (2 Barb Ch at 308). In *Moses v McDivitt* (88 NY 62 [1882]), we endorsed the Chancery Court's analysis, repeating its distinction between acquiring a thing in action in order to obtain costs and acquiring it in order to protect an independent right of the assignee (*see* 88 NY at 65). In *Moses*, plaintiff, an attorney, bought a bond and mortgage

---

4. Judiciary Law § 488 (1) applies a similar proscription to attorneys and counselors.

5. Payment of attorneys by fees that are contingent upon successful litigation and derived from its proceeds is expressly permitted in the champerty statute (Judiciary Law § 488 [2] [d]; *see also* 22 NYCRR 603.7).

from defendant in order to coerce the defendant, as a condition of extending his time of payment, to assign to plaintiff certain stock in a company.

> "This purpose, whether honest or reprehensible, was not within the prohibition of the statute. . . . The real question upon which the case turned was, whether the main and primary purpose of the purchase was to bring a suit and make costs, or whether the intention to sue was only secondary and contingent, and the suit was to be resorted to only for the protection of the rights of the plaintiff, in case the primary purpose of the purchase should be frustrated." (88 NY at 67-68.)

We have also held that the champerty statute is violated by an attorney "only if the primary purpose of the purchase or taking by assignment of the thing in action is to enable the attorney to commence a suit thereon" (*Sprung v Jaffe*, 3 NY2d 539, 544 [1957]). In describing champerty in terms of an acquisition made with the purpose of bringing a lawsuit (*see also Bluebird Partners*, 94 NY2d at 736), we intended to convey the difference between one who acquires a right in order to make money from litigating it and one who acquires a right in order to enforce it.

New York cases agree that if a party acquires a debt instrument for the purpose of enforcing it, that is not champerty simply because the party intends to do so by litigation. The inquiry into purpose is a factual one.[6] In *Promenade v Schindler El. Corp.* (39 AD3d 221 [1st Dept 2007]), for example, The Glick Organization, a general contractor, sued by The Promenade for reasons not relevant here, commenced a third-party action for contractual indemnification against some of its subcontractors, including De-Con Mechanical Corp. Promenade and Glick settled. The settlement agreement provided not only that Glick pay Promenade $1.8 million but also that Glick assign Promenade its claim for contractual indemnification against De-Con. The Appellate Division rejected De-Con's argument that the assignment was void for champerty. De-Con's contention was belied by the fact that Promenade had accepted the assigned claim for the purpose of pursuing the full value of its settlement of contractual claims, not for the purpose of "bringing a claim

---

**6.** That is not to say, however, that the issue may not be amenable to summary judgment in an appropriate case.

against De-Con either as an investment or to harass or injure it" (39 AD3d at 223).

Similarly, in *Williams Paving Co. v United States Fid. & Guar. Co.* (67 AD2d 827 [4th Dept 1979]), plaintiff, a corporation that owned a machine damaged by the Joneses, obtained judgment of $27,008.50. Defendant insured the Joneses to a maximum of $5,000. It was alleged that plaintiff had offered to settle the claim within the policy limits and defendant, acting in bad faith, had refused to do so. Plaintiff's insurer became subrogated to plaintiff's claim against the Joneses, and plaintiff sued as nominee of its insurer and assignee of the Joneses, asserting defendant's bad faith. The Appellate Division held that plaintiff's "primary purpose was to protect its own interest in attempting to collect its judgment against the Joneses" and that, in taking the assignment from the Joneses, plaintiff, rather than acting with litigious purpose, had a relationship with the Joneses that gave it a substantial, legitimate interest in the transactions involved in the suit (67 AD2d at 828).

Many other New York cases can be cited for the same principle (*see e.g. Red Tulip, LLC v Neiva*, 44 AD3d 204, 213-214 [1st Dept 2007]; *Hill Intl. v Town of Orangetown*, 290 AD2d 416, 417 [2d Dept 2002]; *G.G.F. Dev. Corp. v Andreadis*, 251 AD2d 624 [2d Dept 1998]; *Small Bus. Admin. v Mills*, 203 AD2d 654, 655 [3d Dept 1994]; *American Bag & Metal Co. v Alcan Aluminum Corp.*, 115 AD2d 958, 959-960 [4th Dept 1985]; *Limpar Realty Corp. v Uswiss Realty Holding*, 112 AD2d 834, 836-837 [1st Dept 1985]; *1015 Gerard Realty Corp. v A & S Improvements Corp.*, 91 AD2d 927, 928 [1st Dept 1983]; *Prudential Oil Corp. v Phillips Petroleum Co.*, 69 AD2d 763 [1st Dept 1979]; *American Express Co. v Control Data Corp.*, 50 AD2d 749, 750 [1st Dept 1975]; *Concord Landscapers v Pincus*, 41 AD2d 759 [2d Dept 1973]). In short, the champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim. What the statute prohibits, as the Appellate Division stated over a century ago, "is the purchase of claims with the 'intent and for the purpose of bringing an action' that [the purchaser] may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up . . . in [an] effort to secure costs" (*Wightman v Catlin*, 113 App Div 24, 28 [2d Dept 1906]).

In the present case, as the Second Circuit explains, the Trust, as the holder of the Arlington Loan and the party that would directly suffer the damages of any default on that loan,

had a preexisting proprietary interest in the loan (556 F3d at 111). If, as a matter of fact, the Trust's purpose in taking assignment of UBS's rights under the Love MLPA was to enforce its rights, then, as a matter of law, given that the Trust had a preexisting proprietary interest in the loan, it did not violate Judiciary Law § 489 (1). Accordingly, we answer the second certified question in the negative.

## III.

The Second Circuit also asks us to clarify the application of the champerty doctrine to certain facts of the present case. The District Court found that the Trust's intent in suing Love Funding was to recover more in compensation for its losses on the Arlington Loan than it had demanded in settlement from UBS on the Arlington Loan. Moreover, the District Court noted that, in accepting the assignment, the Trust believed that Love Funding could be made to indemnify the Trust for a portion of the legal fees UBS incurred defending itself against the Trust.[7] The District Court concluded that the Trust's intent in suing Love Funding was not only to be made whole on losses sustained from the Arlington Loan default, but also to profit from the past litigation, a purpose the District Court found consistent with champerty.

■ Love Funding does not identify, and we are not aware of, any New York case holding that it is champerty to acquire, as part of a settlement, indemnification rights for reasonable costs and fees that were incurred in past legal actions. To acquire indemnification rights to the costs of past litigation is not to acquire a thing in action in order to obtain costs from prosecution thereon.[8] Similarly, no New York case has been brought to our attention that stands for the proposition that it is champerty to settle a dispute by accepting a transfer of rights that has the

---

7. The Trust also seeks the attorneys' fees it paid and costs it expended pursuing Love Funding, as well as its fees and costs related to the Arlington Apartments foreclosure and its lawsuit against Cyrus and its principals.

8. We express no view as to whether the Love MLPA obligates Love Funding to indemnify the Trust for legal fees UBS incurred defending itself against the Trust, prior to the assignment. Although UBS purportedly spent over $30 million defending itself against the Trust, counsel for the Trust stated at oral argument before this Court that the UBS legal fees sought by the Trust amount to some $300,000, for representation relating to the Arlington Loan. We have not been asked whether these are "reasonable attorneys' fees" arising from or related to Love Funding's breach, within the meaning of the Love MLPA.

potential for a larger recovery than one had demanded as a cash settlement. Nor would it be possible in many cases to assess whether rights are likely to yield a larger recovery than earlier demanded. Consequently we answer both parts of the third certified question in the negative.

Accordingly, the first certified question should not be answered as unnecessary, the second certified question should be answered in the negative, the first part of the third certified question should be answered in the negative, and the second part of the third certified question should be answered in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.