07-1050-cv
Trust v. Love Funding Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: September 26, 2008                    Decided: January 11, 2010)

Docket No. 07-1050-cv

TRUST FOR THE CERTIFICATE HOLDERS OF THE MERRILL LYNCH MORTGAGE INVESTORS,
INC., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1999-C1, by and through Orix
Capital Markets, LLC, as Master Servicer and Special Servicer,

*Plaintiff-Appellant*,

—v.—

LOVE FUNDING CORPORATION,

*Defendant-Appellee*.

Before:

B.D. PARKER,[1] RAGGI, *Circuit Judges*, and KEENAN, *District Judge*.[2]

———————————

Appeal from a judgment in favor of Love Funding entered in the United States District

Court for the Southern District of New York (Shira A. Scheindlin, *Judge*), based on a

---

[1] Judge Barrington D. Parker was designated as the third member of the panel pursuant to then-Local Rule § 0.14(b), revised as Internal Operating Procedure E(b), replacing Judge Guido Calabresi, who recused himself earlier in these proceedings.

[2] District Judge John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

determination that the assignment of rights supporting plaintiff's suit was void as champertous. Having previously certified questions regarding the scope of New York's statutory proscription of champerty, see N.Y. Judiciary Law § 489(1), to the New York Court of Appeals, and having now received its response, this court concludes as a matter of law that the trial record cannot support a finding of champerty.

REVERSED AND REMANDED.

IRA M. FEINBERG, Hogan & Hartson LLP, New York, New York (Andowah Newton, Hogan & Hartson LLP, New York, New York, Lorane F. Hebert, Hogan & Hartson LLP, Washington, D.C., *on the brief*), *for Plaintiff-Appellant*.

ALEC W. FARR, Bryan Cave LLP, Washington, D.C. (Michael G. Biggers, Anna C. Ursano, Bryan Cave LLP, New York, New York, *on the brief*), *for Defendant-Appellee*.

REENA RAGGI, *Circuit Judge*:

Plaintiff, the Trust for the Certificate Holders of the Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trust") sued defendant Love Funding Corporation ("Love Funding"), the originator of a defaulted mortgage held by the Trust, for breach of various representations and warranties made in a mortgage loan purchase agreement. Love Funding asserted the defense of champerty based on the fact that the Trust was assigned the right to sue Love Funding as part of a settlement

of claims against UBS Real Estate Securities, Inc. ("UBS"), the successor in interest to Paine Webber Real Estate Securities, Inc. ("Paine Webber"),[3] which funded the defaulted mortgage loan. After a bench trial in the United States District Court for the Southern District of New York, Judge Shira A. Scheindlin voided the assignment as champertous and entered judgment in favor of Love Funding. See Trust for Certificate Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1999-C1 v. Love Funding Corp. ("Trust v. Love Funding"[4]), 499 F. Supp. 2d 314 (S.D.N.Y. 2007).

On appeal, the Trust argued that the assignment could not be champertous because it had a preexisting interest in the loan giving rise to its claim. Because of ambiguities in the scope of New York's statutory proscription of champerty, see N.Y. Judiciary Law § 489, we certified certain questions to the New York Court of Appeals, see Trust v. Love Funding, 556 F.3d 100, 114 (2d Cir. 2009). Having received the Court of Appeals' response, see Trust v. Love Funding, 13 N.Y.3d 190, --- N.Y.S.2d --- (2009), we now conclude, as a matter of law, that the trial record does not permit a finding of champerty. Accordingly, we reverse the challenged judgment and remand the case to the district court for entry of judgment in favor of plaintiff and for a determination of damages.

---

[3] Pursuant to a merger of their parent companies in 2000, UBS succeeded in interest to Paine Webber's rights and obligations under the agreements relevant here.

[4] Because, aside from the parties' titles, this case bore the same full caption in the district court, this court, and the New York Court of Appeals, we henceforth use the shortened caption form in referencing the opinions of each of these courts.

## I.     Background

### A.     Securitization of the Arlington Loan

Although we assume familiarity with our prior opinion in this case, see Trust v. Love Funding, 556 F.3d 100, we briefly recite certain facts relevant to the decision reached today. In April 1999, Love Funding entered into a "conduit lending" arrangement with Paine Webber, which was memorialized in an April 23, 1999 mortgage loan purchase agreement (the "Love MLPA"). Under the Love MLPA, Love Funding represented to Paine Webber that no underlying mortgage loan was in default. In the event that Love Funding breached this, or any other, representation, the Love MLPA provided for certain remedies, including the "repurchase [of the] Mortgage Loan at the Repurchase Price," Love MLPA § 5.03(b), and indemnification "from and against all demands, claims or asserted claims, liabilities or asserted liabilities, costs and expenses, including reasonable attorneys' fees, incurred by an Indemnified Party, in any way arising from or related to any breach of any representation, warranty, covenant or agreement . . . hereunder," id. § 9.14(a).

In July 1999, pursuant to the Love MLPA, Love Funding arranged a $6.4 million mortgage loan (the "Arlington Loan") to Cyrus II Partnership ("Cyrus"), which was secured by a mortgage on Louisiana property known as the Arlington Apartments. On November 1, 1999, Paine Webber sold and assigned 36 loans, including the Arlington Loan, to Merrill Lynch Mortgage Investors, Inc. ("Merrill Lynch"), pursuant to the Merrill Lynch mortgage loan purchase agreement (the "Merrill Lynch MLPA"). In the Merrill Lynch MLPA, Paine

4

Webber represented, as Love Funding had in the Love MLPA, that none of the mortgage loans was in default.

The loans were then securitized through a process that involved the creation of the plaintiff Trust. On November 1, 1999, Merrill Lynch assigned to the Trust all of its "right[s], title and interest . . . in, to and under (i) the Mortgage Loans [including the loans sold by Paine Webber], (ii) each Mortgage Loan Purchase Agreement and (iii) all other assets included or to be included" in the Trust. Pooling and Servicing Agreement § 2.01(a). Commercial mortgage-backed securities, entitling their holders to interest payments generated on the underlying mortgages including the Arlington Loan, were then issued and sold to investors.

B.    Arlington Loan Default and Resulting Litigation

On March 8, 2002, the Trust declared the Arlington Loan to be in default and accelerated payment on the full amount of the loan. The Trust then commenced a mortgage foreclosure action in Louisiana state court, securing a ruling that Cyrus had committed fraud to obtain the Arlington Loan and that such fraud constituted an event of default. As a consequence, the Arlington Apartments were sold for approximately $6.5 million in net proceeds, of which the Trust received $5.9 million. The Trust also obtained a judgment of more than $10 million against Cyrus and its principals.

In September and October 2002, the Trust brought several actions against UBS related to the sale of loans by Paine Webber to the Trust. With respect to the Arlington Loan, the

5

Trust's theory was that, because Cyrus's fraud put the Arlington Loan in default from the outset, Paine Webber (and, therefore, its successor UBS) necessarily breached its representation in the Merrill Lynch MLPA that "there is no material default." Merrill Lynch MLPA, Schedule I ¶ 7. On September 13, 2004, after two years of vigorous litigation, the Trust and UBS reached a settlement releasing the Trust's claims as to 33 loans. While UBS paid the Trust $19.375 million in consideration for releases on 32 loans, the sole consideration for the Trust's release on the Arlington Loan was UBS's assignment of its rights under the Love MLPA.

C.    District Court Proceedings

In November 2004, the Trust commenced this action against Love Funding for breach of the Love MLPA. On October 11, 2005, the district court granted summary judgment in favor of the Trust on its claim that Love Funding had breached its representation that the Arlington Loan was not in default; nevertheless, it allowed Love Funding to amend its answer to assert the affirmative defense of champerty.

On February 27, 2007, after a bench trial, the district court ruled that Love Funding had proved champerty because "the Trust's primary purpose in accepting the Assignment was to buy a lawsuit against Love Funding." Trust v. Love Funding, 499 F. Supp. 2d at 322. The district court relied on the fact that the Trust "carve[d] out . . . a single loan from a group of loans that were settled," id. at 324, and thereby "negotiated for itself 'a whole new lawsuit,' with the intent to 'basically . . . continu[e] a microcosm of the litigation that ha[d]

6

already been going on for the last three years with UBS,'" id. at 322-23 (alterations in original). In reaching this conclusion, the district court further found that the Trust was motivated by a perception that it could recover more on the Arlington Loan by suing Love Funding than by pursuing a cash settlement because it would be able to recoup "millions of dollars in simple and default interest that have been accruing on the loan for years" and because it "could also potentially recover indemnification damages." Id. at 323.

D.    Certification of Questions to the New York Court of Appeals

On appeal, the Trust argued that New York's champerty law did not apply to this lawsuit because the relevant statute "was never intended to prohibit assignments in complex commercial transactions where the assignee has a substantial interest at stake." Appellant's Br. at 26. Recognizing ambiguities in New York law, we certified the following questions to the New York Court of Appeals:

1.    Is it sufficient as a matter of law to find that a party accepted a challenged assignment with the "primary" intent proscribed by New York Judiciary Law § 489(1), or must there be a finding of "sole" intent?

2.    As a matter of law, does a party commit champerty when it "buys a lawsuit" that it could not otherwise have pursued if its purpose is thereby to collect damages for losses on a debt instrument in which it holds a pre-existing proprietary interest?

3.    (a) As a matter of law, does a party commit champerty when, as the holder of a defaulted debt obligation, it acquires the right to pursue a lawsuit against a third party in order to collect more damages through that litigation than it had demanded in settlement from the assignor?

7

(b)   Is the answer to question 3(a) affected by the fact that the challenged assignment enabled the assignee to exercise the assignor's indemnification rights for reasonable costs and attorneys' fees?

Trust v. Love Funding, 556 F.3d at 114.

E.      New York Court of Appeals' Response

The New York Court of Appeals accepted our certification and answered the second question and both parts of the third question in the negative, rendering it unnecessary to answer our first inquiry. Trust v. Love Funding, 13 N.Y.3d at 198, --- N.Y.S.2d at ---.

In responding to our second question, the Court of Appeals emphasized that New York's prohibition of champerty "has always been 'limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs.'" Id. at 199 (quoting Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 94 N.Y.2d 726, 734, 709 N.Y.S.2d 865, 870 (2000)). The Court of Appeals distinguished between "acquiring a thing in action in order to obtain costs," which constitutes champerty, "and acquiring it in order to protect an independent right of the assignee," which does not. Trust v. Love Funding, 13 N.Y.3d at 199, --- N.Y.S.2d at ---. "[I]f a party acquires a debt instrument for the purpose of enforcing it, that is not champerty simply because the party intends to do so by litigation." Id. at 200, --- N.Y.S.2d at ---. Noting our observation that the Trust had a preexisting proprietary interest in the Arlington Loan, the Court of Appeals concluded that, "[i]f, as a matter of fact, the Trust's purpose in taking assignment of UBS's rights under the Love MLPA was to enforce its rights, then, as a matter of law, given that the Trust had a

8

preexisting proprietary interest in the loan, it did not violate Judiciary Law § 489(1)." Id. at 202, --- N.Y.S.2d at ---.

Our third question asked whether the Trust's intent either to recover more in damages from a lawsuit than from a potential settlement or to be indemnified for reasonable costs and attorneys' fees evidenced champerty. The New York Court of Appeals concluded that it did not.

> To acquire indemnification rights to the costs of past litigation is not to acquire a thing in action in order to obtain costs from prosecution thereon. Similarly, no New York case has been brought to our attention that stands for the proposition that it is champerty to settle a dispute by accepting a transfer of rights that has the potential for a larger recovery than one had demanded as a cash settlement.

Id. at 202-03, --- N.Y.S.2d at --- (footnote omitted).

## II. Discussion

Upon receipt of the New York Court of Appeals' response, the parties filed supplemental papers with this court in which they effectively agree that the district court – operating without the benefit of the Court of Appeals' recent explication of New York champerty law – applied a more expansive definition of champerty than was warranted. Love Funding urges us to remand the case to allow the district court to determine whether it nevertheless still finds champerty proved under the standard set forth in the Court of Appeals' response decision. The Trust on the other hand argues for reversal, submitting that, as a matter of law, the record will not permit a finding of champerty. We agree with the

9

latter argument and accordingly reverse the challenged judgment in favor of Love Funding.

A.  The New York Court of Appeals' Decision Effectively Rejects the District Court's Finding of Champerty

New York's statutory prohibition against champerty states, in pertinent part:

[N]o corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon . . . .

N.Y. Judiciary Law § 489(1). The district court found that the challenged assignment violated this statute because "the Trust's primary purpose in accepting the Assignment was to buy a lawsuit against Love Funding." Trust v. Love Funding, 499 F. Supp. 2d at 322.

In answering our second certified question, however, the New York Court of Appeals clarified that such an intent to sue is insufficient, by itself, to violate the statute. As the Court of Appeals explained, New York's champerty statute "does not apply when the purpose of an assignment is the collection of a legitimate claim." Trust v. Love Funding, 13 N.Y.3d at 201, --- N.Y.S.2d at ---. Thus, "if a party acquires a debt instrument for the purpose of enforcing it, that is not champerty simply because the party intends to do so by litigation." Id. at 200, --- N.Y.S.2d at ---. Applying these principles to this case, the Court of Appeals concluded that "if, as a matter of fact, the Trust's purpose in taking assignment of UBS's rights under the Love MLPA was to enforce its rights, then, as a matter of law, given that the Trust had a preexisting proprietary interest in the loan, it did not violate Judiciary Law

10

§ 489(1)." Id. at 202, --- N.Y.S.2d at ---.  This effectively rejects the district court's finding of champerty.

> B.      Because the Trial Evidence Will Not Permit a Finding of Champerty, No Remand Is Warranted in this Case

Love Funding submits that the conditional language at the start of the last quoted passage from the Court of Appeals' decision signals a need to remand this case to permit the district court to resolve a previously unconsidered fact question:  whether the Trust's intent in taking the UBS assignment of rights was, in fact, to enforce its interest in the Arlington Loan.  Such a remand is warranted, however, only if the trial record presents sufficient evidence on the point to allow a factfinder to resolve it in favor of Love Funding, i.e., to find that the Trust intended to sue not to enforce rights under the Love MLPA, but rather to generate and recover the costs of such litigation.  See Sporty's Farm LLC v. Sportsman's Mkt., Inc., 202 F.3d 489, 497 (2d Cir. 2000) (declining to remand when "the findings of the district court, together with the rest of the record, enable us to apply the new law to the case before us without difficulty").  That is not this case.

At the outset, we note that undisputed evidence establishes that, even before the challenged UBS assignment, the Trust had a significant interest in the repayment of the Arlington Loan.  As this court observed in our prior decision, "[t]he Trust was not . . . a party with no interest in the loans that Love Funding had transferred to PaineWebber pursuant to the Love MLPA.  To the contrary, as the end holder of the Arlington Loan, the Trust was the

11

party that would directly suffer the damages of any default on that instrument." Trust v. Love Funding, 556 F.3d at 111. The district court recognized that, by accepting the challenged UBS assignment of rights under the Love MLPA, the Trust acquired the right directly to enforce the Arlington Loan. Nevertheless, the district court denominated the assignment champertous because it determined that the Trust intended from the start to pursue its rights through litigation in order to achieve the greatest possible recovery. See Trust v. Love Funding, 499 F. Supp. 2d at 322-23. As already noted, the Court of Appeals has now clarified that an assignment "is not champert[ous] simply because the party intends to [enforce its rights] by litigation." Trust v. Love Funding, 13 N.Y.3d at 200, --- N.Y.S.2d at ---.

Love Funding thus shifts its argument to contend that, on remand, the district court might conclude that the Trust's purpose in accepting the UBS assignment was "not to enforce its interests in the Arlington Loan, but to engage in a speculative litigation venture against Love Funding to generate and recover costs and damages far greater than its actual Arlington losses." Appellee's Supp. Br. at 7. To be sure, litigation for the purpose of generating and then recovering costs is the essence of champerty under New York law. See Trust v. Love Funding, 13 N.Y.3d at 199, --- N.Y.S.2d at ---. But the record evidence will not support such a characterization where, as here, the challenged assignment allowed the Trust directly to enforce its pre-existing interest in the Arlington Loan.

Love Funding asserts that an inference of champerty can be drawn from the fact that

12

the Trust originally estimated its losses from the Arlington Loan at $3 million. After assignment of UBS's interests, however, the Trust demanded that Love Funding cure its breaches or repurchase the loan for $10 million. The discrepancy is understandable. With UBS's rights under the Love MLPA, the Trust acquired claims to indemnification as well as to actual loan losses. Even if the $10 million demand was excessive under the Love MLPA, however, that fact cannot by itself demonstrate that the Trust's intent was to employ litigation to profit from the costs and fees generated therein rather than to recoup "the full value of its . . . contractual claims." Promenade v. Schindler Elevator Corp., 39 A.D.3d 221, 223, 834 N.Y.S.2d 97, 99 (1st Dep't 2007). As the New York Court of Appeals explained in response to our certified questions, it is not champerty "to settle a dispute by accepting a transfer of rights that has the potential for a larger recovery than one had demanded as a cash settlement." Trust v. Love Funding, 13 N.Y.3d at 202-03, --- N.Y.S.2d at ---.

To the extent Love Funding insists that the Trust's champertous purpose is evidenced by its efforts to use this action to recover litigation costs and fees previously incurred by itself and UBS in connection with the disputed loans, Love Funding conflates litigation instituted for the purpose of generating costs therein, which constitutes champerty, and litigation to enforce contract rights to previously incurred costs, which is effectively an action on a debt instrument. See id. at 200, --- N.Y.S.2d at --- (observing that acquisition of "a debt instrument for the purpose of enforcing it . . . is not champerty simply because the party intends to do so by litigation"). The Court of Appeals recognized as much in specifically

13

rejecting Love Funding's argument that the Trust's intent to sue Love Funding "not only to be made whole on losses sustained from the Arlington Loan default, but also to profit from the past litigation" evidenced champerty. Id. at 202, --- N.Y.S.2d at ---. It explained that it is not champerty "to acquire . . . indemnification rights for reasonable costs and fees that were incurred in past legal actions." Id. (observing further that "[t]o acquire indemnification rights to the cost of past litigation is not to acquire a thing in action in order to obtain costs from prosecution thereon" (emphasis added)). In short, even if the Trust's entitlement to previously incurred costs and fees under the Love MLPA is sufficiently debatable to view that part of its pending claim as a "speculative litigation venture," Appellee's Supp. Br. at 8, the Trust's acquisition and pursuit of that claim cannot evidence champerty.[5]

In expressing concern about the Trust's litigation to recover "millions of dollars more than the Trust had been prepared to accept from UBS on the Arlington Loan," the district court referenced only the "interest that [has] been accruing on the loan for years" and "indemnification damages from Love Funding under . . . the Love MLPA," Trust v. Love Funding, 499 F. Supp. 2d at 323, neither of which can support a champerty finding in light of the Court of Appeals' responsive decision, see Trust v. Love Funding, 13 N.Y.3d at 202-

---

[5] While we express no view on the district court's calculation of damages on remand, we note that to the extent it indicated a preliminary inclination to award $1,736,668.35 in damages, an amount that excluded indemnification for costs the Trust incurred pursuing Cyrus, see Trust v. Love Funding, 499 F. Supp. 2d at 325 n.79, the Trust's recovery here could actually be less than its initial estimated loss of $3 million on the Arlington Loan. Accordingly, this lawsuit is unlikely to yield the hypothetical "profit" that Love Funding challenges.

14

03; --- N.Y.S.2d at ---. The district court made no finding that the Trust intended to generate new costs in this litigation. Because such cost-generation was the essence of champerty even at the time of the district court's decision, see Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 94 N.Y.2d at 734, 709 N.Y.S.2d at 870, we can hardly conclude that the district court inadvertently neglected to make such a critical finding while instead reaching for a broader construction of champerty. Because the record does not support a finding of intent to generate new costs, we conclude that remand for further factfinding is unnecessary in this case. Love Funding's champerty defense fails as a matter of law.

## III. Conclusion

To summarize, in light of the New York Court of Appeals' response to our certified questions in this case, see Trust v. Love Funding, 13 N.Y.3d 190, --- N.Y.S.2d ---, we conclude as a matter of law that the trial record does not permit the Trust's acquisition of UBS's rights under the Love MLPA to be held champertous in violation of New York Judiciary Law § 489(1). Accordingly, we REVERSE the judgment of the district court in favor of Love Funding, and we REMAND the case for entry of judgment in favor of the Trust and a calculation of damages.

15